**Richard M. PLATO, Appellant,**

**v.**

**ALVIN STATE BANK, Appellee.**

No. 01–88–00436–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

Aug. 24, 1989.

Arno Schwamkrug, Houston, for appellant.

Thomas A. Hunter, Rolston & Hausler, Houston, for appellee.

Before EVANS, C.J., and DUGGAN and O'CONNOR, JJ.

O'CONNOR, Justice.

Alvin State Bank filed suit against Richard M. Plato to recover $197,750, the amount owed on two notes, plus interest and other damages. The trial court granted the Bank summary judgment, from which Plato appeals.

On August 7, 1985, Plato executed two promissory notes, one for $190,000 and another for $7,750. Plato also executed two security agreements, by which he pledged 330,267 shares of South Fork Oil and Gas Company stock as collateral. When South Fork Oil and Gas Company later changed its name to Tejas Oil and Gas Company, Plato delivered new stock certificates to the Bank. Both notes matured on February 3, 1986. At that time, Plato was to pay the entire amount of principal and interest due. Plato made no payment.

The Bank claims that on November 20, 1987, it tried to sell the Tejas stock at public sale. Because no one offered to buy the stock, the Bank deemed the collateral to be worthless. On December 7, 1987, the Bank filed its suit for judgment on the notes.

The trial court granted the Bank's motion for summary judgment and entered a judgment against Plato on the two notes. On the first note, the trial court awarded the Bank $190,000 principal, and over $77,000 in interest. On the second note, the trial court awarded the Bank $7,750 principal, and over $3,000 in interest. The trial court also granted the Bank attorney's fees of $10,000 and court costs.

In the beginning of March 1988, the Bank returned the Tejas stock certificates to Plato. After the stock was returned, the trial court entered judgment for the Bank. The Bank had the stocks in its possession for about 25 months after Plato defaulted on the note.

Plato raises three points of error. Because the second point disposes of the case,

we will not address the other points. In his second point of error, Plato claims the Bank did not meet the standard a secured party must meet in conducting a public or private sale of collateral. Plato contends the Bank did not conduct the sale in a commercially reasonable manner, according to section 9.504 of the Business and Commerce Code. Tex.Bus. & Com.Code Ann. sec. 9.504 (Vernon Supp.1989).

Commercial reasonableness of the sale was an element of the Bank's cause of action, as plaintiff. *Tanenbaum v. Economics Laboratory, Inc.*, 628 S.W.2d 769, 771 (Tex.1982); *Carroll v. General Elec. Credit Corp.*, 734 S.W.2d 153 (Tex.App.—Houston [1st Dist.] 1987, no writ). As the movant, the Bank had to establish there was no genuine issue about any material fact, and it was entitled to a summary judgment as a matter of law. Tex.R.Civ.P. 166a(c). Included in the Bank's burden was the requirement that it conducted the foreclosure sale in a commercially reasonable manner and gave proper notice of the sale. *Tanenbaum*, 628 S.W.2d at 771; *Sunjet, Inc. v. Ford Motor Credit Co.*, 703 S.W.2d 285 (Tex.App.—Dallas 1985, no writ).

In his response to the motion for summary judgment, Plato swore he had personal knowledge that during the months of October through December, 1987, Tejas stock was traded in open market at a buy-sell value of $0.04 to $0.10 per share. The Bank did not respond to that allegation with any summary judgment proof. The question for us is whether Plato's statement about the market for Tejas stock raised a fact issue to preclude summary judgment.

The Bank claims that it did not sell the stock; it just decided the stock was worthless. We agree that the Bank did not sell the stock, in the sense of transferring ownership of the stock in exchange for money. The Bank did determine, however, that the stock was worthless, and it retained the stock certificates until just before the trial court entered judgment. If there was a market for the stock, as Plato claims, the Bank could have sold the stock for $0.04 a share, and realized about $13,000 to offset against the deficit of the note.

Section 9.207 defines the rights and duties of a secured party who has possession of the collateral. Subsection (a) states the general rule:

> A secured party must use reasonable care in the custody and preservation of collateral in his possession. In the case of an instrument or chattel paper reasonable care includes taking necessary steps to preserve rights against prior parties unless otherwise agreed.

Tex.Bus. & Com.Code Ann. sec. 9.207 (Vernon Supp.1989). The Code does not define "reasonable care in the custody and preservation of collateral." Comment, *Duty of a Pledgee under Section 9-207*, 10 B.C. Indus. & Com.L.Rev. 301 (1966). Most courts applying section 9.207 have interpreted "reasonable care" to encompass a duty to preserve value. Comment, *Pledged Securities—The Pledgee's Duty to Preserve Value Under the Uniform Commercial Code*, 62 Marquette L.Rev. 391, 394 (1979).

On this record, Plato raised a fact issue about the Bank's handling of the stock. If, at the time the Bank "attempted" to sell the stock and found no buyers, there was a market for the purchase of the stock at $0.04 per share, it was not reasonable for the Bank to deem the stock worthless. On this record, the Bank was not entitled to a summary judgment.

We sustain the second point of error, reverse the judgment, and remand the cause to the trial court.