**Roy Allen ADCOCK & Nita Adcock, Appellants,**

v.

**FIRST CITY BANK OF ALICE, Appellee.**

No. 04–90–00121–CV.

Court of Appeals of Texas, San Antonio.

Nov. 14, 1990.

Mark R. Paisley, Perkins, Oden, Warburton, McNeill, Adami & Paisley, P.C., Alice, for appellants.

James A. Erck, Erck & Wright, Alice, for appellee.

Before BUTTS, PEEPLES and BIERY, JJ.

OPINION

BIERY, Justice.

First City Bank of Alice ("the Bank") sued Nita Adcock and Roy Allen Adcock, guarantors, to recover the deficiency on an unpaid promissory note. The Adcocks answered and counterclaimed that the Bank had not properly complied with the notice and commercially reasonable sale requirements of Chapter 9 of the Texas Business and Commerce Code.

In answer to the only issue submitted, the jury found that an agreement existed between the Bank and Nita Adcock and that the collateral was sold pursuant to that agreement. The sufficiency of the

evidence to support the jury's verdict is not challenged. The trial court thereafter entered a judgment for the Bank allowing recovery for the deficiency from Nita Adcock and Roy Allen Adcock, jointly and severally. We affirm.

In 1982, the Bank made a $125,000 loan to Chantilly, Inc. The loan was partially secured by certain shares of stock owned by Nita Adcock in the Alice Leasing Corporation. The Bank took possession of the shares along with a signed stock power. In addition, both Nita Adcock and Roy Allen Adcock signed personal guaranty agreements for the indebtedness. Between 1982 and 1986, the note and loan were renewed on several occasions. By May and June of 1986, Chantilly, Inc. was in arrears on its debt, having made only two scheduled payments in the preceding eight months. Nita Adcock and an officer of the Bank tried to find a way to bring the note current. They ultimately agreed that the stock would be sold to Alice Leasing Corporation. The sale was completed on June 18, 1986. The proceeds checks from the sale were delivered to the Bank where they were endorsed by both the Bank and Nita Adcock and applied to the Chantilly, Inc. indebtedness and the personal indebtedness of Nita Adcock.

Following the sale of the stock, the appellants continued to pay on the indebtedness. By October 13, 1986, an additional $27,102.76 had been paid to the Bank. These payments were, in large part, due to the continued effort to liquidate Chantilly Inc.'s assets. On October 17, 1986, Chantilly, Inc. executed another renewal note in the amount of $70,366.70 which formed the underlying indebtedness upon which the Bank brought suit. Following the bankruptcy of Chantilly, Inc., recovery against the appellants was based on their personal guaranty agreements.[1]

■ In the first and second points of error, appellants contend that the Bank did not plead or prove as a condition precedent that (1) notice was given prior to the sale or disposition of the stock; and (2) the shares were disposed of in a commercially reasonable manner pursuant to § 9.504 of the Texas Business and Commerce Code. Appellants therefore assert that the Bank cannot recover a deficiency judgment. While it is clear that § 9.504 applies when there is a sale after default by the secured creditor, we are presented with the question of whether § 9.504 applies when the parties sell collateral by agreement to bring the note current and lower the remaining indebtedness. We find no Texas cases which have previously addressed this issue.

One of the options a creditor has when a party defaults is to renegotiate the loan. J. WHITE & R. SUMMERS, UNIFORM COMMERCIAL CODE § 25-4 (3d ed. 1988). Another option, when the note is in default, is to reduce the claim to judgment, foreclose on the collateral, or otherwise enforce the security interest by any available judicial procedure. TEX.BUS. & COMM.CODE § 9.501(a) (Vernon Supp. 1990). Instead of choosing the remedies provided by the Code, the Bank and Nita chose to work out an agreement to bring the note current and reduce the indebtedness. In so doing, the Bank effectively waived the claimed default at that time and allowed the appellants to continue making payments as the assets of Chantilly, Inc. were liquidated. *See Fletcher v. Cobuzzi*, 499 F.Supp. 694, 700 (W.D.Pa.1980).

To hold that an agreed sale of collateral is subject to the notice and commercial

---

1. The guaranty agreements executed by the appellants were identical in form and provided:
   This guaranty is not conditioned upon any maximum amount of indebtedness, nor upon diligence, demand, notice or protest, and said Bank may as its option, without prejudice to this guaranty, accept renewals, change the form of indebtedness, surrender, release or substitute any collateral and require additional signers, endorsers and other guarantors. Debts incurred and evidenced by any instrument in writing signed or endorsed by said borrower shall be conclusively covered by this guaranty as between the signers hereof and said Bank. Notice from Bank of the acceptance of this guaranty is hereby waived.
   This guaranty shall be terminated only by written notice delivered to said Bank, and in event of such termination this guaranty shall extend to any and all said indebtedness which may be owing, whether then matured or not.

reasonableness provisions would put any lender in a precarious situation. Creditors, acting in good faith, would not be able to work out a repayment plan with debtors without first giving notice of any action concerning the collateral, even though already agreed to or requested by the debtor himself. The debtor would, in essence, be given the ability to agree to the sale and then immediately avoid any further liability because the proper notices were not given. The supreme court in *Tanebaum v. Economics Laboratory, Inc.*, 628 S.W.2d 769, 772 (Tex.1982) spoke of the abuse that would be permitted if creditors were entitled to *unilaterally* dispose of the property without notice and assign an arbitrary value as a credit against the debt. That is not the case here.[2] To allow the debtor to avoid liability for any deficiency which remains after an agreed sale would improperly take advantage of the secured creditor's good faith in seeking to bring the loan current and avoid foreclosure. We hold that the agreed sale of stock was not a sale after default governed by the provisions of § 9.504.

In addition, the record reflects that on October 17, 1986 (four months after the sale of the stock), Nita Adcock executed a renewal note on behalf of Chantilly, Inc. By the agreement to extend and the execution of the renewal note, a new contract between the parties was created which evidenced the existing debt. *Sum-*

mit Bank v. The Creative Cook, 730 S.W.2d 343, 346 (Tex.App.—San Antonio 1987, no writ); *Priest v. First Mortgage Co.*, 659 S.W.2d 869, 871 (Tex.App.—San Antonio, 1983, writ ref'd n.r.e.). The extent of a guarantor's liability is measured by the terms of the note. *Hopkins v. First Nat'l Bank*, 551 S.W.2d 343, 345 (Tex. 1977); *First Bank of Houston v. Bradley*, 702 S.W.2d 683, 686 (Tex.App.—Houston [14th Dist.] 1985, no writ). The original note as well as the renewal note expressly provided that any renewal or extension would not affect the guarantor's liability. A renewal note which is binding on the borrower and covered under the terms of the guaranty is binding on the guarantors. *Holland v. First Nat'l Bank*, 597 S.W.2d 406, 411 (Tex.Civ.App.—Dallas 1980, writ dism'd).

In addition, no assertion was made at the time the October 1986 renewal note was executed that the indebtedness had been extinguished because of the stock sale four months prior. It was not until this suit was filed that such an assertion was made. The record reflects that the Bank declared the October 17th note in default on January 17, 1987, and brought suit to recover the unpaid balance. Points of error one and two are overruled.[3]

In point of error three, appellants asserts that the Bank did not prove or obtain findings on the issue of damages or on the issue of ownership of the note,

**2.** The potential for abuse was not present in that the parties agreed to the sale, the shares were sold for book value, and the appellant was given the opportunity to repurchase the shares at a later date.

**3.** Although the pleadings of the Bank did not make the assertion, the evidence showed that the agreed sale was conducted in a commercially reasonable manner pursuant to subsection (c). TEX.BUS. & COMM.CODE ANN. § 9.504(c) (Vernon Supp.1990). The stock was sold for book value which was the proper method of valuation. *See Mercantile Bank & Trust v. Cunov*, 749 S.W.2d 545, 549 (Tex.App.—San Antonio 1988, writ denied). Further, appellant was told that she could repurchase the stock at some future date.

With reference to the notice provisions of § 9.504(c), written notice is not absolutely required if the secured party takes reasonable

steps to notify the debtor. *Beltran v. Groos Bank*, 755 S.W.2d 944, 946 (Tex.App.—San Antonio 1988, no writ); *MBank Dallas N.A. v. Sunbelt Mfg., Inc.*, 710 S.W.2d 633, 635–36 (Tex.App.—Dallas 1986, writ ref'd n.r.e.). Actual knowledge is notice. *See MBank*, 710 S.W.2d at 635. The jury finding of an agreement indicates that Nita had actual knowledge that the stock would be sold and that it would be sold to Alice Leasing Corporation. The purpose of giving notice to the debtor is to allow the debtor either to bid on the collateral or to insure that the sale is a commercially reasonable one. *Beltran*, 755 S.W.2d at 947. Having been involved in various conversations with the Bank concerning the impending sale, Nita was given the opportunity to bid on the collateral or seek an outside buyer who would bid a higher price than the book value price received. The purpose and spirit of § 9.504 were satisfied.

which are essential elements of the Bank's case. The Bank's offer of proof included testimony by a bank officer that the unpaid principal was $70,081.37 and that the accrued and unpaid interest was approximately $25,000.00. In addition, a letter was introduced, without objection, indicating the amount of interest due as of March 20, 1987, and providing a per diem amount. The notes and guaranty agreements were also admitted without objection.

Section 3.307 of the Texas Business & Commerce Code provides that when signatures are admitted or established, production of the instrument entitles a holder to recover unless the defendant establishes a defense. *Favors v. Yaffe*, 605 S.W.2d 342, 344 (Tex.Civ.App.—Houston [14th Dist.] 1980, writ ref'd n.r.e.); TEX.BUS. & COMM.CODE § 3.307(b) (Vernon 1968). The record reflects that the Bank was the holder of the instrument in that it was the named payee, had possession of the notes and guaranty agreements, produced them in court and offered them into evidence without objection. *Gotcher v. Lamar State Bank*, 714 S.W.2d 365, 371 (Tex.App. —Beaumont 1986, writ ref'd n.r.e.); *Schubiger v. First Newport Realty Investors*, 601 S.W.2d 218, 222 (Tex.Civ.App.—Dallas 1980, writ ref'd n.r.e.). Based upon the record and § 3.307, the Bank was entitled to recover on the notes and guaranty agreements. *Id.* Further, the total amount of interest due at the time of trial could be readily calculated from the evidence of record. The third point of error is overruled.

In the final point of error, appellants contend that they should be allowed to recover through their counterclaim the monies paid after the asserted improper sale of the collateral. Having held § 9.504 to be inapplicable, we hold that this point is moot.

Accordingly, the judgment of the trial court is affirmed.