F.O. ROQUEMORE, Jr., Appellant,

v.

NATIONAL COMMERCE BANK, Assignee of the Federal Deposit Insurance Corporation as Receiver of Woodway Bank & Trust, N.A., Appellee.

No. 6–91–097–CV.

Court of Appeals of Texas, Texarkana.

July 28, 1992.

Randal J. Lerner, Houston, for appellant.

Charles E. Lobb, Jr., Klaus, Smith & Ressling, L.L.P., Houston, for appellee.

Before CORNELIUS, C.J., and BLEIL and GRANT, JJ.

## OPINION

GRANT, Justice.

F.O. Roquemore appeals from a summary judgment in favor of National Commerce Bank (the Bank) in a suit on a note.

Roquemore contends the trial court erred in granting summary judgment because there are genuine issues of material fact as to whether the Bank performed all conditions precedent under the promissory note; whether the Bank pleaded and proved that its predecessor disposed of the collateral in a commercially reasonable manner in accordance with TEX.BUS. & COM.CODE ANN. § 9.504(c) (Vernon 1991); and whether the Bank used reasonable care to preserve the collateral in accordance with TEX.BUS. & COM.CODE ANN. § 9.207 (Vernon 1991) (Texas Uniform Commercial Code).

In 1985, Houston Wholesale Nursery, Inc. executed a promissory note payable to Woodway Bank & Trust. The obligation was secured by accounts receivable, inventory, and certain stocks, including 4,225 shares of Houston Oil Trust stock and 3,800 shares of Kaneb Services stock.

Between June 1985 and June 1987, Kaneb Services stock declined in value from 8½ per share to 2⅝ per share, and Houston Oil Trust stock depreciated from 3¾ per share to 1⅜ per share. Roquemore alleges that, beginning in June 1985, he repeatedly asked Woodway officers to liquidate the collateral.[1] The shares were not sold until May and June of 1987, when the proceeds were considerably less than the amount owed by Roquemore on the note. The promissory note sued upon, one of several renewals of the original obligation, was executed on September 15, 1989, and came due on March 15, 1990.

Woodway Bank & Trust filed this suit in July 1990. Woodway later became insolvent, and the Federal Deposit Insurance Corporation (FDIC) transferred certain of Woodway's assets, including this note, to the Bank. The Bank was then substituted as plaintiff. In March of 1991, summary judgment was granted in favor of the Bank in the amount of the note, less setoffs, plus interest, court costs, and a $5,000 attorney's fee.

The movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. In deciding whether there is a disputed material fact, evidence favorable to the nonmovant will be taken as true, and every reasonable inference will be indulged in the nonmovant's favor. *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548 (Tex.1985).

Roquemore's first point of error is that the Bank did not meet the burden required by TEX.R.CIV.P. 54:

In pleading the performance or occurrence of conditions precedent, it shall be sufficient to aver generally that all conditions precedent have been performed or have occurred. When such performances or occurrences have been so plead, the party so pleading same shall be required to prove only such of them as are specifically denied by the opposite party.

Roquemore contends that, because the Bank's petition is silent as to conditions precedent, the Bank failed to comply with Rule 54. We agree. The Texas Supreme Court in *Greathouse v. Charter National Bank–Southwest*, 35 Tex.Sup.Ct.J. 1017, 1992 WL 148109 (July 1, 1992), held that a creditor in a deficiency suit must plead that disposition of the collateral was commercially reasonable. The Court said that this may be pleaded specifically or by averring generally that all conditions precedent have been performed or have occurred. If pleaded, the creditor is required to prove

---

1. The earliest promissory note included in the record was executed October 10, 1985, several

months after Roquemore allegedly began urging Woodway officials to sell the stock.

that the disposition of the collateral was commercially reasonable only if the debtor specifically denies it in his answer. In the present case, the Bank did not plead specifically or generally, and Roquemore specifically pleaded that the Bank had not disposed of the collateral in a reasonable commercially manner.

Roquemore contends that summary judgment was improper because there are genuine issues of material fact whether Woodway disposed of the collateral in a commercially reasonable manner in accordance with TEX.BUS. & COM.CODE ANN. § 9.504(c) and whether Woodway used reasonable care to preserve the collateral in accordance with TEX.BUS. & COM.CODE ANN. § 9.207. In order to sue for a deficiency judgment, the secured creditor must have complied with Section 9.504, which requires that a sale of collateral be commercially reasonable. *Tanenbaum v. Economics Laboratory, Inc.* 628 S.W.2d 769, 772 (Tex. 1982).

The Bank contends summary judgment was correct even despite Roquemore's contention for two reasons:

First, the Bank argues that it is a holder in due course and took the note free from the defense of commercial reasonableness. A holder in due course takes the instrument free from all claims and all defenses except those listed in TEX.BUS. & COM.CODE ANN. § 3.305(b) (Vernon 1968), which are not relevant here. Though the FDIC does not meet the technical requirements for holder in due course status, it has been declared to have such status. *NCNB Texas Nat. Bank v. Campise*, 788 S.W.2d 115,

118 (Tex.App.—Houston [14th Dist.] 1990, writ denied); *Smith v. Federal Deposit Ins. Corp.*, 800 S.W.2d 648 (Tex.App.—Houston [14th Dist.] 1990, writ dism'd by agr.).[2] Transfer of an instrument vests in the transferee such rights as the transferor had therein. TEX.BUS. & COM.CODE ANN. § 3.201 (Vernon 1968). Because the FDIC was a holder in due course, the Bank, as the FDIC's transferee, is also a holder in due course. *See NCNB Texas Nat. Bank v. Campise, supra.*

In the *Greathouse* case, the Texas Supreme Court has resolved the issue, upon which there had been a split of authority,[3] by holding that a commercially reasonable disposition of the collateral is in the nature of a condition to a creditor's recovery in a deficiency suit. We therefore find that commercially reasonable disposition is not a defense that would be lost by a transfer to a holder in due course and that the Bank in this case did not take the note free from the requirement of pleading in some form that this condition precedent has been met.

Second, the Bank also argues that Roquemore waived his defenses. Section 9.501(c) of the Texas and Business Commerce Code provides that the rights of the debtor and the duties imposed upon the secured party in certain subsections of the Code cannot be waived or varied. The section requiring commercial reasonableness is not one of the sections specifically mentioned.

When a note is made in renewal of a prior obligation known by the maker to be

**2.** The FDIC took the note as part of a bulk transaction not in the regular course of business and thus cannot be a holder in due course under TEX.BUS. & COM.CODE ANN. § 3.302(c)(3) (Vernon 1968). Under *D'oench, Duhme & Co. v. Federal Deposit Ins. Corp.*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942), however, the FDIC has holder in due course status. *See Federal Savings and Loan Ins. Corp. v. Murray*, 853 F.2d 1251, 1256 (5th Cir.1988).

**3.** *See Smith v. Federal Deposit Ins. Corp.*, 800 S.W.2d 648, 651 (Tex.App.—Houston [14th Dist.] 1990, writ dism'd by agr.); *NCNB Texas Nat. Bank v. Campise*, 788 S.W.2d 115 (Tex.App.—Houston [14th Dist.] 1990, writ denied); *Chase Commercial Corp. v. Datapoint Corp.*, 774 S.W.2d 359, 364 (Tex.App.—Dallas 1989, no writ); *Plato v. Alvin State Bank*, 775 S.W.2d 861, 862 (Tex.App.—Houston [1st Dist.] 1989, no writ); *Molyneaux v. MBank Corpus Christi, N.A.*, 776 S.W.2d 744, 746 (Tex.App.—Corpus Christi 1989, no writ); *Daniell v. Citizens Bank*, 754 S.W.2d 407, 409 (Tex.App.—Corpus Christi 1988, no writ); *Hall v. Crocker Equipment Leasing, Inc.*, 737 S.W.2d 1, 3 (Tex.App.—Houston [14th Dist.] 1987, writ denied); *Achimon v. J.I. Case Credit Corp.*, 715 S.W.2d 73, 76 (Tex.App.—Dallas 1986, writ ref'd n.r.e.); *Sunjet, Inc. v. Ford Motor Credit Co.*, 703 S.W.2d 285, 287 (Tex.App.—Dallas 1985, no writ).

fraudulent or without consideration, the renewal note constitutes a waiver of the defense. *Hunter v. Lanius,* 82 Tex. 677, 18 S.W. 201 (1892); *City of Houston v. Lyons Realty, Ltd.,* 710 S.W.2d 625, 629 (Tex. App.—Houston [1st Dist.] 1986, no writ). The Bank argues that this principle should be extended to the present case and that Roquemore waived his defenses by executing a renewal note with full knowledge of the disposition of the collateral. Roquemore is not contending that there was any deception in the original transaction or involving the amount of the original indebtedness but only that he is entitled to an offset for the price of the sale of the collateral in a commercially reasonable sale. According to the exhibits and affidavits, the original note signed by Roquemore was for $55,000. He was given credit on the note for $4,999.17 for the sale of Houston Oil stock and for $9,671.50 for the sale of the Kaneb stock. The stocks were sold in 1987. Roquemore executed a renewal note on September 15, 1989, for $26,900.02, which represented the balance due after his payments were credited and after he had received credit for the sale of the stocks, which had been held as collateral.

■ The elements of waiver are that a party possessing a right (1) is aware of that right and (2)(a) expressly relinquishes it or (2)(b) acts in a manner inconsistent with, or fails to act in a manner consistent with an intent to claim the right. *PGP Gas Products, Inc. v. Reserve Equipment, Inc.,* 667 S.W.2d 604 (Tex.App.—Austin 1984, writ ref'd n.r.e.). The Bank contends Roquemore's signing of the renewal note was an acknowledgment and acceptance of the amount of credit that he had received from the sale of the stocks.

■ Ordinarily, whether there has been a waiver is a question of fact to be determined by the jury. *Burton v. National Bank of Commerce of Dallas,* 679 S.W.2d 115 (Tex.App.—Dallas 1984, no writ). However, the question becomes one of law where the facts and circumstances are admitted or clearly established. *Shaw Equipment Co. v. Hoople Jordan Construction Co.,* 428 S.W.2d 835 (Tex.Civ. App.—Dallas 1968, no writ).

■ In the present case, the Bank has not pleaded waiver and has not contended waiver in its motion for summary judgment and the accompanying summary judgment proof. It has been raised for the first time on appeal. Thus, Roquemore was not confronted with a need to respond with pleadings or evidence to this theory of law. A summary judgment cannot be affirmed on any grounds not presented in the motion for summary judgment. *Hall v. Harris County Water Control & Improvement District No. 50,* 683 S.W.2d 863, 867 (Tex. App.—Houston [14th Dist.] 1984, no writ).

■ The Bank further contends that the sale of the stocks was commercially reasonable as a matter of law. A sale of collateral may be commercially reasonable even if it was not sold at the most advantageous time:

> The fact that a better price could have been obtained by a sale at [a] different time or in a different method from that selected by the secured party is not of itself sufficient to establish that the sale was not made in a commercially reasonable manner. If the secured party … sells the collateral in … any recognized market therefor … he has sold in a commercially reasonable manner.

TEX.BUS. & COM.CODE ANN. § 9.507(b) (Vernon 1991). The Fifth Circuit has construed this section to mean that the sale of collateral on a recognized market, e.g., a stock market, is commercially reasonable as a matter of law. *Federal Deposit Ins. Corp. v. Blanton,* 918 F.2d 524 (5th Cir.1990).[4] The record, however, does not affirmatively show that the Bank sold the stocks on a recognized market in the present case or how the stocks were sold.

4. *Federal Deposit Ins. Corp. v. Blanton,* 918 F.2d 524 (5th Cir.1990), is factually similar to the present case. In 1983, Blanton defaulted on a note secured by stocks. The FDIC sold the stocks in 1987, although Blanton had requested the FDIC to sell as early as 1983. The jury found that the FDIC unreasonably delayed the sale of the stocks, and the trial court credited Blanton with the amount that would have been realized if the stocks had been timely liquidated.

Roquemore's specific complaint is that Woodway bank officers did not liquidate the stocks when he requested them to. But his request was made before he actually defaulted on the note.[5] Section 9.504 of the Texas Business and Commerce Code is entitled the "Secured Party's Right to Dispose of Collateral After Default; Effect of Disposition." Section captions are part of the text of the UCC, not mere surplusage. TEX.BUS. & COM.CODE ANN. § 1.109 (Vernon 1968). Thus, Section 9.504 applies to dispositions after a default, not to the present situation.

This was the approach taken in *Adcock v. First City Bank of Alice*, 802 S.W.2d 305 (Tex.App.—San Antonio 1990, no writ). The court in *Adcock* held that an agreed sale of collateral stock to bring a note current and lower the remaining indebtedness did not constitute a sale after default subject to the notice and commercial reasonableness requirements of Section 9.504. In the case of *First Nat. Bank v. Gittelman*, 788 S.W.2d 165 (Tex.App.—Houston [14th Dist.] 1990, writ denied), the court found that a creditor who sold an automobile held as collateral prior to default without notification violated Section 9.504. The court in *Gittelman* found that the action of the Bank was the equivalent of disposition of collateral upon default and thus required reasonable notification to the owner of the time and place of the sale. *Gittelman* can be distinguished from *Adcock* because *Adcock* did not involve a default sale, but rather an agreed sale of collateral stock prior to default. In the present case, the action complained about was not what occurred after the default; rather, it was the failure to sell the stocks prior to the default. Thus, it appears that Section 9.504 does not apply to the inaction of which Roquemore complains.[6]

While we find no merit to Roquemore's specific claim that the Bank failed to dispose of the stocks before default, Roquemore in his pleadings has generally alleged that the Bank failed to dispose of the stocks in a commercially reasonable manner. As previously stated, this puts the burden on the Bank to plead and prove that it did. It has done neither. Therefore, on this general ground, we cannot uphold the summary judgment.

Roquemore also contends that Woodway failed to preserve the collateral. "A secured party must use reasonable care in the custody and preservation of collateral in his possession." TEX.BUS. & COM.CODE ANN. § 9.207(a). Section 9.207 applies when the secured party has possession of collateral as a pledgee before default. TEX. BUS. & COM.CODE ANN. § 9.207 comment 4 (Tex. UCC).

UCC comment 1, however, indicates that Section 9.207(a) imposes the same duty imposed at common law, *citing* RESTATEMENT OF SECURITY, §§ 17 and 18. The rule of reasonable care expressed in Section 17 is "confined to the physical care of the chattel, whether an object ... or a negotiable instrument or document of title." RESTATEMENT OF SECURITY § 17 cmt. a (1941). The comment to Section 18 states: "The pledgee is not liable for a decline in the value of pledged instruments, even if timely action could have prevented such decline." RESTATEMENT OF SECURITY § 18 cmt. a (1941).

In *Capos v. Mid–America Nat. Bank of Chicago*, 581 F.2d 676 (7th Cir.1978), the Seventh Circuit, construing the Illinois UCC and applying the above analysis, held that a bank has no duty to its borrower to sell collateral stock of declining value. Unlike Roquemore, Capos asked his bank not to sell the stock. The federal district court therefore found that Capos's contributory negligence caused his loss. But the Seventh Circuit refused even to find that the bank owed a duty:

---

**5.** Roquemore told Woodway officers that he did not anticipate being able to pay the note upon maturity.

**6.** Roquemore has alleged in his pleadings that, "Plaintiff agreed to liquidate the stock and represented to the Defendant that it would liquidate the stock but did not attend to this matter promptly." He states in his affidavit that the Bank made "repeated assurances and agreement that the stock would be sold promptly." If Roquemore is contending a new agreement as a basis for his defense, this is not covered in our discussion because it is not raised in his points of error or brief.

We would have no difficulty affirming the court's judgment on the ground of contributory negligence if the underlying duty were that found by the district court to exist....

Mid–America urges us to affirm the district court judgment on the alternative ground that a bank has no duty to its borrower to sell collateral stock of declining value. We think it appropriate to do so. It is the borrower who makes the investment decision to purchase stock. A lender in these situations merely accepts the stock as collateral, and does not thereby itself invest in the issuing firm.

*Capos v. Mid–America Nat. Bank of Chicago,* 581 F.2d at 680; *see Federal Deposit Ins. Corp. v. Air Atlantic, Inc.,* 389 Mass. 950, 452 N.E.2d 1143 (1983).

The court in *Plato v. Alvin State Bank,* 775 S.W.2d 861 (Tex.App.—Houston [1st Dist.] 1989, no writ), said that most courts in applying Section 9.207 have interpreted "reasonable care" to encompass a duty to preserve value. We do not agree that this provision requires a bank to do more than preserve the collateral itself.

There is no reason why the secured party should have to bear the risk of a rise or fall in price. A secured party is often in a dilemma. If he sells, the debtor may complain that he should have waited for a higher offer. If he does not sell because he thinks the price might be deemed inadequate, he may ultimately be obligated to sell at a lower price, in which case the debtor will possibly claim the secured party's failure to go forward with the initial sale violated commercial reasonableness. *Pruske v. National Bank of Com. of San Antonio,* 533 S.W.2d 931, 937 (Tex.Civ. App.—San Antonio 1976, no writ).

While we find that the Bank has no duty to liquidate the stocks prior to the foreclosure and that its failure to do so is not a proper challenge to the commercial reasonableness of the sale, nor is it a proper complaint to the Bank's duty of reasonable care, custody, and preservation of the collateral, we find that the Bank did not meet its burden in proving that the stocks were disposed of in a commercially reasonable manner.

The summary judgment of the trial court is reversed and remanded for a new trial.