**FEDERAL DEPOSIT INSURANCE CORPORATION, in its Capacity as Receiver of American National Bank—Post Oak, Plaintiff,**

v.

**Charles G. FLOYD, Jr., Defendant.**

**Civ. No. 3:93–CV–1272–H.**

United States District Court,
N.D. Texas,
Dallas Division.

May 17, 1994.

---

See also, 827 F.Supp. 409.

Norbert T. Starr, Roy G. Morris, F.D.I.C., Legal Section, and Joseph W. Spence, Gardere & Wynne, Dallas, TX, for plaintiff.

Lawrence J. Friedman, Friedman & Associates, and Michael S. Fawer, Dallas, TX, for defendant.

## ORDER

SANDERS, Chief Judge.

Before the Court are Plaintiff's Motion for Summary Judgment, with supporting material, filed January 31, 1994; Defendant's Response, with supporting material, filed April 22, 1994; and Plaintiff's Reply, filed May 3, 1994.

## I. BACKGROUND

On May 24, 1991, Defendant Floyd executed and delivered to American National Bank—Post Oak ("the Bank") a promissory note (the "Note") payable to the order of the Bank in the original principal amount of two hundred and forty thousand dollars ($240,-000.00), bearing interest before maturity at the rate of 11% per annum. *See* Affidavit of Rodney Smith, Ex. A, copy of the Note. As collateral for the Note, Defendant Floyd pledged 48,966 shares of Lancaster Bancshares, Inc., stock ("Lancaster stock") to secure payment of the Note. Affidavit of Charles Floyd at p. 2, ¶ 5.

On June 25, 1992, the Bank was declared insolvent by the Comptroller of the Currency, and the Federal Deposit Insurance Corporation ("FDIC") was appointed as its Receiver. The FDIC, by virtue of its appointment as Receiver, succeeded to all rights, title and interest of the Bank in the Note. Smith Affidavit at p. 3, ¶ 6b. The FDIC is the owner and holder of the Note. *Id.*

On May 24, 1992, the terms of the Note required Defendant Floyd to repay thirty thousand dollars ($30,000) of the principal due on the Note. *See* Smith Affidavit, Ex. A. Defendant Floyd did not make the required payment. Neither the Bank, nor the FDIC as Receiver for the Bank, attempted to foreclose upon or sell the shares of Lancaster stock which had been pledged as collateral. *See* Floyd Affidavit at p. 3, ¶¶ 7, 8. In April, 1993, the shares of Lancaster stock became worthless. *Id.* at p. 3, ¶ 9.

On May 24, 1993, the Note matured by its own terms, and Defendant Floyd failed to and refused to make payment on the unpaid principal and interest accrued on the Note. Smith Affidavit at p. 3, ¶ 6d.

On June 28, 1993, FDIC filed its Original Complaint in this Court, seeking "collection of all amounts due pursuant to the Note." Original Complaint at p. 3, ¶ 10. On January 31, 1994, the FDIC filed its Motion for Summary Judgment.

## II. SUMMARY JUDGMENT STANDARD

In proper circumstances, awarding summary judgment is not disfavored in the fed-

eral courts: "[s]ummary judgment reinforces the purpose of the Rules, to achieve the just, speedy, and inexpensive determination of actions, and, when appropriate, affords a merciful end to litigation that would otherwise be lengthy and expensive." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1197 (5th Cir.1986).

Summary judgment is proper when the pleadings and evidence on file show that no genuine issue exists as to any material fact and that the moving party is entitled to judgment or partial judgment as a matter of law. *See* Fed.R.Civ.P. 56. Before a court may grant summary judgment, the moving party must demonstrate that it is entitled to judgment as a matter of law because there is no actual dispute as to an essential element of the non-movant's case. *See Topalian v. Ehrman*, 954 F.2d 1125 (5th Cir.), *cert. denied*, — U.S. —, 113 S.Ct. 82, 121 L.Ed.2d 46 (1992). The threshold inquiry, therefore, is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Of course, "the substantive law will identify which facts are material." *Id.* at 248, 106 S.Ct. at 2510.

The Supreme Court has explained that a movant for summary judgment need not support the motion with evidence negating the opponent's case; rather, once the movant establishes that there is an absence of evidence to support the non-movant's case, the burden is on the non-movant to make a showing sufficient to establish each element as to which that party will have the burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25, 106 S.Ct. 2548, 2552–54, 91 L.Ed.2d 265 (1986).

Once the burden shifts, the non-moving party must "come forward with 'specific facts showing that there is a *genuine issue for trial.*'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (emphasis in original) (*quoting* Rule 56(e)); *see also Fontenot*, 780 F.2d at 1195–98. A party must do more than simply show some "metaphysical doubt as to the material facts."

*Matsushita*, 475 U.S. at 586, 106 S.Ct. at 1356. Stated another way, "[i]f the record, taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Friou v. Phillips Petroleum Co.*, 948 F.2d 972, 974 (5th Cir.1991) (citing *Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356). In determining whether a genuine issue exists for trial, all of the evidence must be viewed in the light most favorable to the motion's opponent. *Gremillion v. Gulf Coast Catering Co.*, 904 F.2d 290, 292 (5th Cir.1990).

The Fifth Circuit has noted that summary judgment is particularly appropriate for suits on promissory notes. *FDIC v. Cardinal Oil Well Servicing Co., Inc.*, 837 F.2d 1369, 1371 (5th Cir.1988) ("Typically, suits on promissory notes provide fit grist for the summary judgment mill."); *Resolution Trust Corp. v. Marshall*, 939 F.2d 274, 276 (5th Cir.1991).

With these summary judgment standards in mind, the Court turns to an analysis of Plaintiff's motion in this case.

### III. ANALYSIS

■ Under Texas law, in order to recover on the Note, the FDIC must show: (1) that Floyd executed the Note and delivered it to the Bank; (2) that the FDIC is the owner and holder of the Note; and (3) that the amount for which recovery is sought remains unpaid and owing under the terms of the Note. *Sharp v. Brock*, 626 S.W.2d 166 (Tex. App.—Fort Worth 1981, no writ); *Life Ins. Co. of Va. v. Gar–Dal. Inc.*, 570 S.W.2d 378 (Tex.1978). *Cf. RTC v. Marshall*, 939 F.2d at 276–77 ("To prevail in its summary judgment motion, the RTC had to establish (1) that the note and the guaranty agreement exist and are valid, (2) that the RTC is the present holder or owner of the note, (3) that [debtor] defaulted on the note, and (4) that [guarantor] is liable under the guaranty agreement.").

The FDIC has presented summary judgment evidence establishing each of these three elements. Therefore, the burden shifts to Defendant Floyd to show that there is a disputed issue of material fact.

■ Defendant Floyd does not dispute the evidence presented by Plaintiff. Rather, Floyd argues that the FDIC has the burden of proving that it disposed of the Lancaster stock in a commercially reasonable manner. In support of his argument, Floyd cites *Christian v. First Nat. Bank of Weatherford,* 531 S.W.2d 832, 839 (Tex.Civ.App.—Forth Worth 1975, writ ref'd n.r.e.); *Daniell v. Citizens Bank,* 754 S.W.2d 407, 409 (Tex. App.—Corpus Christi 1988, no writ) and *F.O. Roquemore v. National Commerce Bank,* 837 S.W.2d 212, 216 (Tex.App.—Texarkana 1992, no writ). None of the cases cited by Defendant are on point.

*Christian* acknowledges that when a secured party engages in the sale of a debtors property, it does so in a fiduciary capacity. 531 S.W.2d at 839. *Christian,* however, does not apply to situations in which the secured party has not sold the collateral.

■ Similarly, *Daniell* addresses the applicability of Tex.Bus. and Commerce Code § 9.504[1] to the sale of collateral. Section 9.504 allows the lender to "sell, lease or otherwise dispose of any or all of the collateral ... following any commercially reasonable preparation or processing." Tex.Bus. and Commerce Code § 9.504. *Daniell* place the burden of proving the commercial reasonableness of such disposal of collateral on the lender. 754 S.W.2d at 409. *Daniell* and § 9.504, however, do not apply to situations in which the secured party has not "sold, leased or otherwise disposed of" the collateral.

Finally, the relevant discussion in *Roquemore* pertains to Tex.Bus. and Commerce Code § 9.207.[2] Section 9.207 requires a secured party to use reasonable care in the preservation of collateral in its possession. Floyd argues that § 9.207 places a burden upon the Bank and the FDIC to have sold the Lancaster stock in a commercially reasonable manner.

In *Roquemore,* the secured party held stock as collateral for a note. The secured party sold the collateral stock after the price of the stock had dropped significantly. In situations where the secured party actually sold the collateral, the *Roquemore* court concluded that the secured party carries the burden of proving the commercial reasonableness of the sale of the collateral. 837 S.W.2d at 217. However, the court in *Roquemore* stated:

> We do not agree that [§ 9.207] requires a bank to do more than preserve the collateral itself. There is no reason why the secured party should have to bear the risk of a rise or fall in price.... [W]e find that the Bank has no duty to liquidate the stocks prior to the foreclosure and that its failure to do so is not a proper challenge to the commercial reasonableness of the sale, nor is it a proper complaint to the Bank's duty of reasonable care, custody, and preservation of the collateral ...

837 S.W.2d at 217. Thus, had the secured party in *Roquemore* preserved the collateral rather than selling it, the secured party would have satisfied its duty under § 9.207.

The three cases cited by Defendant Floyd apply to situations in which a secured party has disposed of the collateral securing the loan. In such situations, the secured party owes a duty to the debtor to dispose of the collateral in a commercially reasonable manner. In the case at the bar, neither the Bank nor the FDIC ever disposed of the Lancaster stock. *See* Floyd Affidavit at p. 3, ¶¶ 7, 8. The cases cited by Defendant are not apposite to the case at the bar.

Defendant has failed to establish that Plaintiff has breached any duty. Defendant Floyd has failed to show that there is a dispute as to any material fact. Plaintiff FDIC is entitled to judgment as a matter of law.

---

1. Section 9.504 provides, in relevant part:
   A secured party after default may sell, lease or otherwise dispose of any or all of the collateral in its then condition or following any commercially reasonable preparation or processing. Tex.Bus. and Commerce Code § 9.504(a).

2. Section 9.207 provides, in relevant part:
   A secured party must use reasonable care in the custody and preservation of collateral in his possession. Tex.Bus. and Commerce Code § 9.207(a).

## IV. CONCLUSION

The FDIC has shown through uncontroverted summary judgment evidence: (1) that Defendant Floyd executed the Note and delivered it to the Bank; (2) that the FDIC is the owner and holder of the Note; and (3) that the amount for which recovery is sought remains unpaid and owing under the terms of the Note. Neither the Bank nor the FDIC had a duty to sell or dispose of the Lancaster stock. There is no burden upon the FDIC to show that its decision not to sell the Lancaster stock was a commercially reasonable decision. Therefore, Defendant has failed to show that there is a disputed issue of material fact, and the FDIC is entitled to judgment as a matter of law.

The FDIC's Motion for Summary Judgment is **GRANTED.** The FDIC is also entitled to recover from Defendant all reasonable attorney's fees.

The FDIC is **DIRECTED** to file a proposed final judgment by *noon, May 18, 1994.*

The Clerk of the Court is directed to *fax* this Order to counsel for the parties.

SO ORDERED.