**NCNB TEXAS NATIONAL BANK, Assignee of the Federal Deposit Insurance Corporation as Receiver for First RepublicBank Houston, N.A., Successor to First RepublicBank Spring Branch f/k/a RepublicBank Spring Branch, Appellant,**

v.

**James A. CAMPISE, Appellee.**

**No. B14–89–128–CV.**

Court of Appeals of Texas, Houston (14 Dist.).

March 22, 1990.

Rehearing Denied April 19, 1990.

James H. Pearson, Houston, for appellant.

Jon Mercer, Houston, for appellee.

Before ROBERTSON, DRAUGHN and SMITH (Retired), JJ.

## OPINION

DRAUGHN, Justice.

NCNB Texas National Bank ("NCNB") appeals from a summary judgment granted in favor of James A. Campise. Republic-Bank was the holder of four notes. The notes were collateralized by various liens on equipment, inventory, and accounts of two companies. Campise guaranteed three of the notes. The Small Business Administration ("SBA") guaranteed the remaining note.

When the makers of the notes defaulted, RepublicBank transferred the note guaranteed by the SBA, and the liens securing the note, to the SBA. The SBA foreclosed on

the collateral. NCNB filed suit against Campise on his guarantees on the remaining three notes. Campise filed a motion for summary judgment alleging that he received no notice from the SBA regarding the sale of the collateral and that NCNB is therefore barred from seeking a deficiency from him based on Texas Business and Commerce Code section 9.504(c) (Vernon Supp.1989). The trial court granted Campise's motion. In two points of error NCNB claims the trial court erred in granting Campise's motion and in denying NCNB's cross-motion for summary judgment. Concluding that NCNB is a holder in due course and Campise is liable on the three notes, we reverse and render judgment for NCNB.

RepublicBank made three loans to Candleign, Inc. The first was for $165,000 and was guaranteed by the SBA. That note was secured by the equipment, inventory, and accounts receivable of Candleign. A second note was executed by Candleign and later renewed for $149,999. The second note was secured by a subordinated lien on the accounts, inventory, and equipment of Candleign. The note was guaranteed by Campise and others. Five years later, Candleign took out a third note, which was guaranteed by Campise, among others, and secured by the accounts, inventory, and equipment of Candleign. The third note was for $35,000. A second company named Custom Candles and Gifts, Inc. executed a $74,974.99 note payable to RepublicBank. That note was guaranteed by Campise and secured by the accounts, inventory, and equipment of Custom Candles.

Prior to filing suit, RepublicBank sent notice to Campise and others that a "private and/or public sale" of the inventory and equipment of both companies would be held on "August 16, 1986 or at any time thereafter." After sending that notice, RepublicBank chose not to foreclose on the collateral and assigned the $165,000 Candleign note and the first lien security agreements to the SBA. RepublicBank also surrendered the keys to the premises to the SBA, who began paying rent on the space. In consideration for the transfer of the collateral, the SBA paid RepublicBank 90% of the amount then due on the note, or $56,500.

RepublicBank Spring Branch was subsequently succeeded by First RepublicBank Spring Branch, N.A. and later by First RepublicBank Houston, N.A. First RepublicBank Houston was declared insolvent by the Comptroller of the Currency on July 29, 1988. The Federal Deposit Insurance Corporation ("FDIC") was appointed receiver for First RepublicBank Houston. JRB Bank was established as a bridge bank under 12 U.S.C. § 1813(i)(2). The assets of First RepublicBank Houston were sold and assigned to JRB Bank. JRB Bank changed its name to NCNB Texas National Bank. The FDIC, in its corporate capacity, owns 100% of the non-voting shares of NCNB; this ownership constitutes 80% of the outstanding shares of the stock. NCNB Texas Bancorporation owns the remaining 20%.

In its first point of error NCNB claims the trial court erred in granting Campise's motion for summary judgment. NCNB claims, as the transferee of the FDIC, it is a holder in due course and immune from Campise's defense of lack of notice on the sale of collateral.

■ Under Texas law, for a creditor in a secured transaction to sue for a deficiency after disposition of collateral, the creditor must first comply with those provisions of section 9.504 of the Texas Business and Commerce Code that require giving notice to the debtor. *Tannenbaum v. Economics Laboratory, Inc.*, 628 S.W.2d 769, 772 (Tex. 1982). Holders in due course are immune to the notice defense under Texas Business and Commerce Code section 3.305 (Vernon 1968), which provides that a holder in due course takes an instrument free from:

(a) all claims to it on the part of any person; and

(b) all defenses of any party to the instrument with whom the holder has not dealt except

(1) infancy, to the extent that it is a defense to a simple contract; and

(2) such other incapacity, or duress, or illegality of the transaction, as renders

the obligation of the party a nullity; and

(3) such misrepresentation as has induced the party to sign the instrument with neither knowledge nor reasonable opportunity to obtain knowledge of its character or its essential terms; and (4) discharge in insolvency proceedings; and

(5) any other discharge of which the holder has notice when he takes the instrument.

■ A holder in due course takes an instrument for value, in good faith, and without notice that it is overdue or has been dishonored or of any defense against or claim to it on the part of any person; provided, the holder does not purchase the instrument as part of a bulk transaction not in the regular course of business of the transferor. TEX.BUS. & COM.CODE ANN. § 3.302 (Vernon 1968). The FDIC does not meet the technical requirements of a holder in due course in this case because it acquired the four notes in bulk through a purchase and assumption transaction, rather than in the normal course of business. TEX.BUS. & COM.CODE ANN. § 3.302 (Vernon 1968). The FDIC claims, however, that it enjoys holder in due course status as a matter of federal common law. We agree.

Because state law mandates that the FDIC, in its corporate capacity, cannot be a holder in due course, application of state law would frustrate important objectives of the federal banking program. A negotiable instrument, such as a note, is a writing signed by the maker, containing an unconditional promise to pay a sum certain in money, on demand or at a definite time, to order or to bearer. TEX.BUS. & COM.CODE ANN. § 3.104 (Vernon 1968). If valid, it is enforceable on its own terms. The real defenses, such as incapacity, fraud in the factum, and forgery, render the note invalid and unenforceable by anyone. TEX.BUS. & COM.CODE ANN. § 3.306 (Vernon 1968). Personal defenses, such as failure of consideration and usury, are not truly defenses against the note itself, but rather, are defenses or claims stemming from the underlying transaction. Those defenses are allowed when the original wrongdoer tries to collect on the note. But when the note comes into the hands of any innocent party, a holder in due course, he takes it free of all personal defenses. TEX.BUS. & COM.CODE ANN. § 3.305 (Vernon 1968). To be innocent, a party must be acting in good faith. TEX.BUS. & COM.CODE ANN. § 1.203 (Vernon 1968). As stated by the sixth circuit in *FDIC v. Wood*, 758 F.2d 156, 160 (6th Cir. 1985):

> The holder in due course doctrine is a bright-line elaboration on the good faith requirement. When an insured bank goes into receivership, the FDIC in most cases will in fact be a good faith holder of its notes. If the FDIC had no knowledge, prior to receivership, of defenses to the notes, and if it otherwise acted in good faith, it cannot be said that the FDIC is not innocent. If it is true that the state's bright-line requirements prevent the FDIC from being a holder in due course, then it is inappropriate to apply those requirements to a government agency crucial to the existence of the modern banking system when they are without purpose.

■ When the FDIC in its corporate capacity, as part of a purchase and assumption transaction, acquires a note in good faith, for value, and without actual knowledge of any defense against the note, it takes the note free of all defenses that would not prevail against a holder in due course. *Id.* at 161.

■ Because the FDIC is a holder in due course, NCNB, as its transferee, is also a holder in due course. NCNB acquired the notes by assignment as part of the "Purchase and Assumption Transaction" from the FDIC. As such, NCNB acquires the rights of the FDIC under the shelter provisions of section 3.201 which states "[t]ransfer of an instrument vests in the transferee such rights as the transferor has therein." TEX.BUS. & COM.CODE ANN. § 3.201 (Vernon 1968).

■ Section 3.201 applies to all transferees regardless of whether the transferees are holders. *Estrada v. River Oaks Bank & Trust Company*, 550 S.W.2d 719, 728

(Tex.Civ.App.—Houston [14th Dist.] 1977, writ ref'd n.r.e). If a transferee shows that his transferor was a holder in due course, the transferee can assert the rights of a holder in due course. *Id.* Because the FDIC is a holder in due course, NCNB is also a holder in due course and takes the notes free of Campise's notice defense. Therefore, the trial court incorrectly granted summary judgment for Campise. NCNB's first point of error is sustained.

In its second point of error NCNB claims the trial court erred in denying its motion for summary judgment. In an appeal of a trial court's grant and denial of cross-motions for summary judgment, we may review the propriety of both the grant of appellee's motion and the denial of appellant's motion. *See River Oaks Shopping Center v. Pagan,* 712 S.W.2d 190, 192–93 (Tex.App.—Houston [14th Dist.] 1986, writ ref'd n.r.e). Because we have found reversible error, we may render judgment for NCNB. *Tobin v. Garcia,* 159 Tex. 58, 316 S.W.2d 396, 400–01 (1958); Tex.R.App.P. 81(c).

■ Campise does not dispute that the notes are overdue, nor does he dispute the amounts due as shown by NCNB's exhibits attached to its cross-motion. Campise does not assert any real defenses that could be successful against a holder in due course; his primary defense is that he was not given notice of the SBA's sale of the collateral. Campise also contends that the SBA improperly disposed of the inventory of Custom Candles and Gifts because that inventory did not secure the note that the SBA guaranteed. The SBA's disposition of Custom Candles and Gifts' inventory, like the notice defense, is not a real defense that can be asserted against NCNB. Because, we have found that the notice defense is not a good defense against NCNB, and we have found that the allegation that the SBA disposed of Custom Candles and Gifts' inventory is not a real defense, Campise is liable for the full amount due on the three notes. According to the documents attached to NCNB's motion, the total amount due on the three notes as of January 15, 1988 is $322,564.43 with $82.30 in interest accruing per diem.

We reverse the trial court's judgment and render judgment for NCNB for the principal and interest due on the notes and appropriate prejudgment and post-judgment interest.