**J. Mike SMITH, Appellant,**

v.

**FEDERAL DEPOSIT INSURANCE CORPORATION, Appellee.**

No. B14–90–00182–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

Nov. 21, 1990.

Rehearing Denied Dec. 20, 1990.

Jon Mercer, Houston, for appellant.

Alan H. Marks, Houston, for appellee.

Before ROBERTSON, SEARS and DRAUGHN, JJ.

## OPINION

SEARS, Justice.

This is an appeal from a summary judgment granted in favor of the Federal Deposit Insurance Corporation [FDIC]. In two related points of error, appellant claims that the trial court erred in granting the FDIC's motion for summary judgment and in not granting appellant's cross-motion for summary judgment because the FDIC failed to plead and prove an essential element of its cause of action. We affirm.

Appellant executed a promissory note to the Bank of Brazoria in the amount of $45,358.07 which was secured by 25,000 shares of Liberty Bank stock. When appellant defaulted, Bank of Brazoria filed suit to recover on the note. Appellant answered and filed a counterclaim, asserting fraud, conspiracy, breach of fiduciary duty and violations of the Texas Business and Commerce Code and the Texas Securities Act. Subsequently, Bank of Brazoria filed a motion to dismiss without prejudice which was granted by the trial court. Bank of Brazoria sold the 25,000 shares of Liberty Bank stock for $4,500; however, the record is not clear on the date of the sale.

The Bank of Brazoria failed in July 1987 and the FDIC was appointed receiver. Certain assets of the bank were sold to the FDIC in its corporate capacity, including the note executed by appellant. The FDIC was substituted into this lawsuit in October 1987 and thereafter reasserted the claim for collection on the note.

On October 30, 1989, the FDIC filed its motion for summary judgment and supporting affidavits. However, the motion and supporting affidavits were silent as to the disposition of the 25,000 shares of Liberty Bank stock. Appellant filed a response and supporting affidavits, asserting that the FDIC failed to prove the collateral was disposed of in a commercially reasonable manner. Appellant then filed his second amended answer, claiming that the collateral was not of a type customarily sold in a recognized market nor of a type which was the subject of widely distributed standard price quotations. Appellant also contended that the FDIC's claim was barred because the Bank of Brazoria failed "to assure a commercially reasonable disposition of the collateral." The FDIC filed an amended motion for summary judgment and supporting affidavits which were likewise silent on the disposition of the collateral. Appellant then filed his cross-motion for summary judgment. The FDIC filed a supplemental affidavit to its amended motion for summary judgment, stating that

the proceeds from the sale of the collateral were applied to the balance due on the note. On January 17, 1990, the trial judge granted the FDIC's motion for summary judgment.

Because appellant's two points of error assert essentially the same argument, we will address them both at once. Appellant claims the trial court erred in granting the FDIC's motion for summary judgment and in not granting his cross-motion for summary judgment because the FDIC failed to plead and prove that the collateral which secured the note was disposed of in a commercially reasonable manner. Thus, appellant is asserting that proof of a commercially reasonable disposition of collateral is an element of the FDIC's cause of action on the secured promissory note. The FDIC contends that the commercial reasonableness of the sale is an affirmative defense which cannot be asserted against it because it is a holder in due course under federal common law.

■ Under Texas law, before a creditor in a secured transaction can sue for a deficiency after disposition of collateral, the creditor must comply with the provisions of section 9.504 of the Texas Business and Commerce Code that require notice to the debtor and a commercially reasonable disposition of collateral. *Tanenbaum v. Economics Laboratory, Inc.*, 628 S.W.2d 769, 772 (Tex.1982). There exists a conflict among the Texas courts as to whether notice and a commercially reasonable disposition of collateral are elements of a secured creditor's cause of action to recover a deficiency, or whether they are defenses which must be asserted by the debtor. In *NCNB v. Campise*, 788 S.W.2d 115 (Tex.App.—Houston [14th Dist.] 1990, writ denied), this court recognized that notice is a defense to be raised by the debtor. *See also Greathouse v. Charter Nat'l Bank–Southwest*, 795 S.W.2d 1, 2–3 (Tex.App.—Houston [1st Dist.] 1990, writ requested); *Folkes v. Del Rio Bank and Trust Co.*, 747 S.W.2d 443, 445 (Tex.App.—San Antonio 1988, no writ); *Stra, Inc. v. Seafirst Comm. Corp.*, 727 S.W.2d 591, 594 (Tex.App.—Houston [1st Dist.] 1987, no writ); *Ward v. First State*

*Bank*, 605 S.W.2d 404, 407 (Tex.Civ.App.—Amarillo 1980, writ ref'd, n.r.e.); *McCollum v. Parkdale State Bank*, 566 S.W.2d 670, 674 (Tex.Civ.App.—Corpus Christi 1978, no writ). However, in *Chase Comm. Corp. v. Datapoint Corp.*, 774 S.W.2d 359, 364 (Tex.App.—Dallas 1989, no writ), the court held that notice and disposition of collateral in a commercially reasonable manner are elements of a creditor's suit to recover a deficiency. *See also Molyneaux v. MBank Corpus Christi, N.A.*, 776 S.W.2d 744, 746 (Tex.App.—Corpus Christi 1989, no writ); *Daniell v. Citizens Bank*, 754 S.W.2d 407, 409 (Tex.App.—Corpus Christi 1988, no writ); *Whirlybirds Leasing Co. v. Aerospatiale Helicopter Corp.*, 749 S.W.2d 915, 918–19 (Tex.App.—Dallas 1988, no writ); *FDIC v. Attayi*, 745 S.W.2d 939, 948 (Tex.App.—Houston [1st Dist.] 1988, no writ); *Commercial Credit Equipment Corp. v. West*, 677 S.W.2d 669, 678 (Tex.App.—Amarillo 1984, writ ref'd n.r.e.).

We disagree with those cases holding that disposition of collateral in a commercially reasonable manner is an element of a secured creditor's cause of action. We think the better line of authority holds that commercial reasonableness is a defense to be raised by the debtor. Therefore, we hold that the commercial reasonableness of a sale of collateral is a defense which must be raised by the debtor to put the creditor to his proof.

Next we must determine whether the FDIC is a holder in due course. A holder in due course takes an instrument for value, in good faith, and without notice that it is overdue or has been dishonored or of any defense against or claim to it on the part of any person; provided, the holder does not purchase the instrument as part of a bulk transaction not in the regular course of business of the transferor. TEX.BUS. & COM.CODE ANN. § 3.302 (Vernon 1968). Further, a holder in due course takes the instrument free from:

(a) all claims to it on the part of any person; and

(b) all defenses of any party to the instrument with whom the holder has not dealt except

(1) infancy, to the extent that it is a defense to a simple contract;

(2) such other incapacity, or duress, or illegality of the transaction, as renders the obligation of the party a nullity; and

(3) such misrepresentation as has induced the party to sign the instrument with neither knowledge nor reasonable opportunity to obtain knowledge of its character or its essential terms; and

(4) discharge in insolvency proceedings; and

(5) any other discharge of which the holder has notice when he takes the instrument.

TEX.BUS. & COM.CODE ANN. § 3.305 (Vernon 1968).

Thus, a holder in due course takes the instrument free from the defense of commercial reasonableness.

■ In the present case, the FDIC in its corporate capacity acquired the note executed by appellant as part of a bulk purchase and assumption transaction, rather than in the normal course of business; therefore, the FDIC does not meet the *technical* requirements of a holder in due course found in TEX.BUS. & COM.CODE ANN. § 3.302 (Vernon 1968). However, the FDIC asserts that it enjoys holder in due course status, as a matter of federal common law, and is free from those defenses set forth in TEX.BUS. & COM.CODE ANN. § 3.305 (Vernon 1968). *See Campbell Leasing, Inc. v. FDIC*, 901 F.2d 1244, 1249 (5th Cir.1990); *FDIC v. Wood*, 758 F.2d 156, 159–60 (6th Cir.1985).

In *FDIC v. Wood*, the court examined the policy reasons for applying federal common law when state law mandates that the corporate FDIC cannot be a holder in due course. 758 F.2d at 159–60; *see also Campbell Leasing, Inc.*, 901 F.2d at 1249. The court recognized that a purchase and assumption transaction usually occurs overnight, so that banking services are not interrupted for a single business day. *Wood*, 758 F.2d at 160. Thus, the use of a purchase and assumption transaction is an extremely effective way for the FDIC to fulfill its purpose of insuring sound, effec-

tive and uninterrupted operation of the banking system. *Id.*

Also, the court stated that if the FDIC were considered to be a holder other than in due course, makers of notes would get a windfall. *Id.; see also Campbell Leasing, Inc.*, 901 F.2d at 1249. A windfall would result because a maker with a personal claim against a defunct bank would effectively have absolute priority on that claim. *Wood*, 758 F.2d at 160. The court explained:

> [t]o rule otherwise would be to authorize special relief provisions out of the FDIC's general fund for the benefit of makers, and we believe such relief should be authorized only by Congress. Because collections by the FDIC in its corporate capacity are refunded to the FDIC as receiver, for the benefit of creditors, when collections exceed the amount the corporate FDIC paid in the purchase and assumption transaction (citation omitted), the proposed relief may be not only at the expense of depositors in general, but specifically to the detriment of other creditors of the defunct bank.

*Id.*

The court acknowledged that when an insured bank goes into receivership, the FDIC in most cases will be a good-faith holder of its notes. *Id.* If, prior to receivership, the FDIC had no knowledge of defenses to the notes and otherwise acted in good faith, it cannot be said that the FDIC is not an innocent holder in due course. *Id.*

In *NCNB v. Campise*, we recognized that application of state law in cases such as this one would frustrate important objectives of the federal banking program because state law mandates that the FDIC, in its corporate capacity, cannot be a holder in due course. 788 S.W.2d at 118. Thus, we held that when the FDIC in its corporate capacity, as part of a purchase and assumption transaction, acquires a note in good faith, for value, and without actual knowledge of any defense against the note, it takes the note fully insulated against all defenses not assertable against a holder in due course. *Id.*

Therefore, applying this rule to the facts of the present case, we hold that the FDIC is a holder in due course of the note signed by appellant, and that it takes the note free of appellant's defenses. We overrule appellant's two points of error.

Accordingly, we affirm the judgment of the trial court.