John F. BURNS, Appellant,

v.

RESOLUTION TRUST CORPORATION,
as Receiver for Alpine Federal Savings
& Loan Association, Appellee.

Nos. C14–93–00444–CV, C14–93–00447–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

June 2, 1994.

Robert H. Singleton, Serena S. Williams, Randall L. Brim, Houston, for appellant.

Travis C. Crowder, David S. O'Neil, Mynde S. Eisen, Houston, for appellee.

Before ROBERTSON, CANNON and DRAUGHN, JJ.

## OPINION

CANNON, Justice.

These consolidated appeals are from deficiency judgments after foreclosure in Colorado on the real property securing the loans. Alpine Federal Savings & Loan Association ("Alpine"), sued John F. Burns ("Burns"), appellant, in two lawsuits to recover deficiencies on nine promissory notes. The cases were tried together to a jury, which found in favor of Burns. From the trial court's grant of judgment notwithstanding the verdict, Burns appeals in eight points of error. We affirm in part and reverse and render in part.

In 1981, Whistler Village Partnership ("Whistler") executed nine promissory notes, each in the original principal amount of $44,595, payable to Alpine in connection with Whistler's purchase of nine units in Phase II of the Whistler Village Townhomes in Steamboat Springs, Colorado. Each of the notes was secured by a deed of trust covering one of the nine units. In 1982, Burns and Jack McEncroe ("McEncroe") purchased the nine condominiums and assumed the loans, executing assumption agreements which released the original borrowers from liability on the notes. After a disagreement about the management of the property, Burns conveyed his interest in the property to McEncroe by deed dated May 11, 1983. In 1987, Burns and McEncroe executed loan modification agreements which reduced the interest rates of the loans.

Burns and McEncroe defaulted on the notes in 1988, and Alpine began foreclosure proceedings. Alpine obtained an Order Authorizing Sale from the district court of Routt County, Colorado, and on April 11, 1989, the Public Trustee conducted a foreclosure sale. Alpine purchased the nine units at the sale. Burns did not exercise his right of redemption provided under Colorado law. *See* COLO.REV.STAT.ANN. § 38–38–302 (West Supp.1993). Alpine later sold the units to third parties, and it instituted this litigation to recover alleged deficiencies on

the notes.[1] After Alpine was declared insolvent, the Resolution Trust Corporation ("RTC"), appellee, was appointed receiver.[2] The RTC, as receiver, was then substituted in each case. In his second amended answer, Burns asserted affirmative defenses including failure of conditions precedent, and he counterclaimed for breach of contract, wrongful foreclosure, and other claims not at issue in this appeal.

After trial in September 1991, the jury returned a verdict in favor of Burns, finding the RTC, or its predecessor, had breached its agreements in the loan documents and awarding contractual damages of $27,000, plus attorney's fees. Over fifteen months later, the trial court granted the RTC's motions for judgments notwithstanding the verdicts. On March 15, 1993, it entered deficiency judgments against Burns in the amount of $44,033.68 and $62,208.68 in the two suits and awarded attorney's fees to the RTC.

■ A trial court may disregard a jury's findings and grant a motion for judgment notwithstanding the verdict only when a directed verdict would have been proper. TEX. R.CIV.P. 301. A directed verdict would be appropriate if the issue is conclusively established as a matter of law. *M.N. Dannenbaum, Inc. v. Brummerhop*, 840 S.W.2d 624, 629 (Tex.App.—Houston [14th Dist.] 1992, writ denied). If there is no evidence upon which the jury could have made its findings, JNOV is proper. TEX.R.CIV.P. 324(c); *Mancorp, Inc. v. Culpepper*, 802 S.W.2d 226, 227 (Tex.1990). In reviewing the grant of a motion for JNOV, we must determine whether there is any evidence upon which the jury could have made its findings. We review the record in the light most favorable to the findings, considering only the evidence and inferences which support them and rejecting the evidence and inferences to the contrary.

*Navarette v. Temple I.S.D.*, 706 S.W.2d 308, 309 (Tex.1986). When there is more than a scintilla of competent evidence to support the jury's finding, the JNOV must be reversed. *Id.* at 309–10.

■ If there is any legal reason why we should affirm the judgment, the RTC should urge that reason by cross-point. TEX. R.CIV.P. 324(c). Having failed to include a cross-point attacking the jury verdict as against the great weight and preponderance of the evidence, the RTC has waived a factual sufficiency review and its request for a remand instead of rendition in the event of reversal. *CPS Intern., Inc. v. Harris & Westmoreland*, 784 S.W.2d 538, 543 (Tex. App.—Texarkana 1990, no writ); *Fidelity & Cas. Co. of New York v. Central Bank of Houston*, 672 S.W.2d 641, 650 n. 1 (Tex. App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.).[3] Thus, unless we find all of Burns' claims are barred as a matter of law, if we find more than a scintilla of evidence to support the jury's findings, we must render judgment for Burns.

■ Colorado law governed the suits because the foreclosures were conducted in Colorado under its applicable statutes. The RTC asked the court to take judicial notice of Colorado law and provided it with copies of Colorado statutes concerning mortgages, deeds of trust, and foreclosure proceedings conducted by public trustees, found in COLO. REV.STAT.ANN. §§ 38–37–101—38–40–115 (West 1990 & Supp.1993). *See* TEX.R.CIV. EVID. 202. We presume Colorado law is the same as Texas law on all other issues. *See Mathis v. Wachovia Bank & Trust Co. N.A.*, 583 S.W.2d 800, 802 (Tex.Civ.App.—Houston [1st Dist.] 1979, writ ref'd n.r.e.) (absent request to take judicial notice or proper proof of laws of another state, Texas courts presume the laws to be the same as in Texas).

1. Jack McEncroe was also originally named in the suits, but was dismissed without prejudice, apparently after filing for bankruptcy protection.

2. Alpine, referred to as "Old Alpine," was placed in receivership on August 23, 1989. "New Alpine" was chartered the same day. New Alpine was placed in receivership on June 22, 1990, and the RTC was appointed receiver of New Alpine.

3. The RTC's reply points, even if construed liberally, are not sufficient. "The failure to bring forward by cross-points such grounds as would vitiate the verdict shall be deemed a waiver thereof...." TEX.R.CIV.P. 324(c).

In point seven, Burns argues the trial court erred in granting JNOV on the jury's answers to questions three, four and four-A because there was more than a scintilla of evidence that Alpine breached the terms of the notes and deeds of trust. In answer to questions three and four, the jury found the RTC failed to perform its agreements according to the terms of the notes and deeds of trust. In question four-A, the jury determined that Burns' damages for failure to receive the contractual notice under the notes and deeds of trust were $3,000 for each unit.

Burns' contractual claims are based on his contention that Alpine and the RTC did not comply with the express terms of the notes and deeds of trust in sending the required notice of acceleration before foreclosure. The notes and deeds of trust provided that the holder must give at least thirty days notice of its intent to accelerate the balance due on the note after default. That notice must be sent, by certified mail, to the property address or such other address as the borrower designates by proper written notice to the lender.

Burns contends the evidence established Alpine failed to give the proper notices required by these provisions. He specifically denied receiving the letter from Alpine dated October 4, 1988, which notified of the intent to accelerate and foreclose if $15,891 was not paid by November 3, 1988. This notice of acceleration was mailed to Burns and McEncroe at P.O. Box 774485, Steamboat Springs, Colorado, which is neither the property address nor an address designated by Burns. Alpine's records showed Burns' address as his home address in Spring, Texas, although there is no evidence of a written designation of this address. Burns received subsequent notices sent to his Spring, Texas address. Burns concludes there is more than a scintilla of evidence that the RTC breached its agreements. In our opinion, Burns' third point of error is dispositive of this point and most of the remaining issues in this appeal.

■ In point of error three, Burns argues that the court erred in basing its JNOV on the federal holder in due course doctrine. This doctrine allows the FDIC and RTC, as receivers for failed financial institutions, to acquire holder in due course status under federal common law even though they cannot meet the technical requirements under state law. *FDIC v. Payne*, 973 F.2d 403, 407 (5th Cir.1992). A holder in due course takes a note free of all claims against it or any personal defenses. TEX.BUS. & COM.CODE ANN. § 3.305 (Vernon 1968); COLO.REV.STAT. ANN. § 4-3-305 (West 1989).[4]

■ Burns contends the RTC only urged this doctrine in its motions for JNOV against his wrongful foreclosure claim, and it was not raised against and cannot defeat his other defenses or claims. While we recognize that a motion for JNOV must state specific grounds, we disagree with Burns' strict interpretation of this requirement under these facts. Because the RTC's motions specifically urged the federal holder in due course doctrine as one of the grounds for JNOV and quoted case law holding that the holder in due course doctrine bars a claim of lack of notice, the doctrine's application to all of Burns' notice contentions, including his claims of breach of contract, was apparent. From reading the motions as a whole, and considering that all of Burns' claims center around his lack of notice complaint, we find that the motions for JNOV were sufficient to

4. The language in these sections is identical, and is as follows:

To the extent that a holder is a holder in due course he takes the instrument free from
(a) all claims to it on the part of any person; and
(b) all defenses of any party to the instrument with whom the holder has not dealt except
 (1) infancy, to the extent that it is a defense to a simple contract; and
 (2) such other incapacity, or duress, or illegality of the transaction, as renders the obligation of the party a nullity; and
 (3) such misrepresentation as has induced the party to sign the instrument with neither knowledge nor reasonable opportunity to obtain knowledge of its character or its essential terms; and
 (4) discharge in insolvency proceedings; and
 (5) any other discharge of which the holder has notice when he takes the instrument.
TEX.BUS. & COM CODE ANN. § 3.305 (Vernon 1968); COLO.REV.STAT.ANN. § 4-3-305 (West 1989).

give Burns reasonable notice. *See* TEX. R.CIV.P. 301.

■ Burns asserts that the federal holder in due course doctrine does not apply here because the assumption agreements and loan modification agreements are not negotiable instruments. The federal holder in due course doctrine does not protect non-negotiable instruments. *Payne,* 973 F.2d at 408. The requirements for a negotiable instrument are that it must:

(1) be signed by the maker or drawer; and

(2) contain an unconditional promise or order to pay a sum certain in money and no other promise, order, obligation or power given by the maker or drawer except as authorized ...; and

(3) be payable on demand or at a definite time; and

(4) be payable to order or to bearer.

TEX.BUS. & COM.CODE ANN. § 3.104(a) (Vernon 1968); *see also* COLO.REV.STAT.ANN. § 4–3–104(1) (West 1989). The notes underlying the assumption and modification agreements satisfy these requirements and are negotiable instruments; however, Burns contends these subsequent agreements add an obligation to pay taxes on the property, which amount is estimated in the assumption agreement, and may vary each year. Burns argues this estimated payment makes the documents non-negotiable because they no longer contain an obligation to pay a sum certain. We disagree.

■ First, the obligation to pay the taxes on the property is not a *new* promise; it already existed by virtue of provisions in paragraph two of each deed of trust. Moreover, it is to the terms of the *note* that we look for satisfaction of the negotiability requirements. "A separate agreement does not affect the negotiability of an instrument." TEX.BUS. & COM.CODE ANN. § 3.119(b) (Vernon 1968); COLO.CIV.STAT.ANN. § 4–3–119(2) (West 1989). In addition, the negotiability of an instrument is not affected by "a promise or power to maintain or protect collateral or to give additional collateral." TEX.BUS. & COM.CODE ANN. § 3.112(a)(3) (Vernon 1968); COLO.CIV.STAT.ANN. § 4–3–112(1)(c) (West

1989). We consider the obligation to pay taxes a promise to maintain or protect the collateral, for failure to pay taxes could cause the noteholder to lose the collateral through foreclosure of a tax lien on the property. The fifth circuit has agreed with this interpretation in *Fidelity Trust Co. v. Mayhugh,* 268 F. 712, 716 (5th Cir.1920) (provisions in mortgage securing note requiring mortgagor to pay taxes and maintain insurance relate to security only and do not affect note's negotiability). Colorado law also supports this view. *See Frost v. Fisher,* 13 Colo.App. 322, 58 P. 872, 875–77 (1899) (deed of trust requiring payment of taxes and, if not paid by borrower, adding the amount paid by lender to indebtedness, did not render note uncertain as to amount and non-negotiable).

■ Burns' argument is not advanced by his reliance on *Hinckley v. Eggers,* 587 S.W.2d 448 (Tex.Civ.App.—Dallas 1979, writ ref'd n.r.e.). In *Hinckley,* the note's negotiability was contested because it was not an *unconditional* promise. TEX.BUS. & COM. CODE ANN. § 3.104(a)(2) (Vernon 1968). A promise is not unconditional if it "states that it is to be paid out of a particular fund or source." TEX.BUS. & COM.CODE ANN. § 3.105(b)(2) (Vernon 1968). A non-recourse note has the effect of making the note payable out of a particular fund or source, namely, the proceeds of a sale of the property covered by the deed of trust. 587 S.W.2d at 450. The court held that a note is not negotiable if it provides that the maker has no personal liability for the principal sum and that the holder's only remedy on default is foreclosure on the collateral. *Id.* at 451.

The note in *Hinckley* also provided that in the event of default, the maker would be personally liable for an amount equal to the taxes owed on the property plus accrued interest on the note. In concluding that this provision did not establish negotiability, the court recognized that the amount of taxes was not a "sum certain;" however, it interpreted the term "sum certain" to mean the principal sum. *Id.* Therefore, *Hinckley* does not support Burns' position.

We agree, however, that the requirement for a promise to pay a sum certain should apply to the *principal* of the note. *See* Re-

vised U.C.C. § 3.112, 2 U.L.A. 39, comment 1 (1991), as cited in *Amberboy v. Society de Banque Privee*, 831 S.W.2d 793, 796 n. 7 (Tex.1992). We conclude that an obligation to pay the taxes on the property securing a note does not defeat its negotiability. Thus, the RTC is entitled to the protections of the federal holder in due course doctrine.

■■■ This court has previously rejected a lack of notice defense in a deficiency suit by applying this holder in due course doctrine. *NCNB Texas Nat'l Bank v. Campise*, 788 S.W.2d 115, 118–19 (Tex.App.—Houston [14th Dist.] 1990, writ denied). In *Campise*, NCNB acquired the subject notes from the FDIC, and was a holder in due course with all the rights of the FDIC under the shelter provisions of section 3.201, providing that "[t]ransfer of an instrument vests in the transferee such rights as the transferor has therein." TEX.BUS. & COM.CODE ANN. § 3.201 (Vernon 1968). We determined that the borrower's claim that he failed to receive notice of the sale of collateral was a personal defense, barred by the federal holder in due course doctrine. 788 S.W.2d at 118–19. *See also FDIC v. Adam*, 803 F.Supp. 1225, 1228–29 (S.D.Tex.1992) (defense of improper notice of default barred by federal holder in due course doctrine); *Smith v. FDIC*, 800 S.W.2d 648, 650–52 (Tex.App.—Houston [14th Dist.] 1990, writ dism'd) (FDIC as receiver is holder in due course under federal common law, barring borrower's defenses based on commercial reasonableness of sale of collateral).

We conclude that our decision in *Campise* applies here, and hold that all of Burns' claims of lack of notice, including his breach of contract claims, are barred by the federal holder in due course doctrine. Because the trial court correctly applied the federal holder in due course doctrine, we overrule Burns' third point of error. Consequently, we also overrule his seventh point of error complaining of JNOV on his breach of contract issue.

■■■ In point eight, Burns argues that there was more than a scintilla of evidence to support his attorney's fees. He relies on the

Texas Civil Practices and Remedies Code for his entitlement to attorney's fees based on breach of contract. TEX.CIV.PRAC. & REM. CODE ANN. § 38.001 (Vernon 1986). Without reaching the question of whether recovery of attorney's fees against the RTC as receiver for a failed bank may be precluded by federal common law, we hold Burns is not entitled to attorney's fees because his contract claims are barred. *Siegler v. Williams*, 658 S.W.2d 236, 240 (Tex.App.—Houston [1st Dist.] 1983, no writ) (attorney's fees only recoverable if claimant obtains judgment). Point of error eight is overruled.

■■■ In his first point of error, Burns argues the trial court erred in failing to enter a take nothing judgment in his favor based on the jury's answer to question one, where it found the amount owing by Burns to the RTC on the notes was zero. If the jury makes a negative finding in answer to a question, it means the party with the burden of proof has failed to carry its burden. *Grenwelge v. Shamrock Reconstructors, Inc.*, 705 S.W.2d 693, 694 (Tex.1986) (per curiam). A trial court may not properly disregard a jury's negative finding and substitute its own affirmative finding unless the evidence conclusively establishes the issue. *New Process Steel Corp. v. Steel Corp. of Texas, Inc.*, 703 S.W.2d 209, 216 (Tex.App.—Houston [1st Dist.] 1985, writ ref'd n.r.e.). Burns asserts that in the face of conflicting evidence of the deficiency amount, the trial court erred in granting JNOV. We agree.

■■■ Even though Burns' defenses to the deficiency suit are barred by the holder in due course doctrine, the RTC is not relieved of its burden of proof. Burns argues that the RTC did not meet its burden to establish the amount of the debt. The noteholder must establish the amount of the debt, the sale price, that the sale price was applied to the debt, and the resulting deficiency. *National Canada Corp. v. Dikeou*, 868 P.2d 1131, 1134 (Colo.App.1993). The RTC places some importance on the fact that the deficiency amounts owing after the foreclosure sale were certified by the public trustee on the back of each note.[5] This evidence, based

---

5. Although these certified amounts were urged in the RTC's motions for JNOV, the amounts actual-   ly awarded by the trial court are different.

on the sale price, is not a conclusive measure of the deficiency if the sale is not conducted in good faith or in a strictly fair manner. *United Bank of Lakewood Nat. Ass'n v. One Center Jt. Venture,* 773 P.2d 637, 639–40 (Colo.App.1989) (directed verdict for bank improper where evidence conflicted as to good faith of bank's bid at foreclosure sale, and jury verdict of zero damages affirmed based on evidence of duplications of deductions in calculation of bid); *see also National Canada Corp.,* 868 P.2d at 1134–35 (amount of deficiency is jury question if debtor contends foreclosure sale not in good faith or unfair). Moreover, the Colorado foreclosure statutes contemplate contesting the deficiency amount. For example, the failure to bid the fair market value of the property may be raised as a defense to a suit for a deficiency. COLO.CIV.STAT.ANN. § 38–38–106 (West Supp. 1993).

Therefore, Burns properly presented evidence contesting the amount owing on the notes. Viewing the evidence most favorably to the jury's finding, there is the testimony of Robert Bunch, the RTC's representative, whose testimony contradicted Alpine's records showing payments received after the claimed default. He testified that based on his review of the loans, no payments were made after August 1, 1988. The loan history records, however, indicated payments were received on August 31, 1988 and September 30, 1988. Alpine's bid sheets also did not appear to have applied the interest paid by these payments to reduce the total debt. John Connor, Alpine's loan recovery manager, testified rental payments were received after foreclosure, but the deficiency amount relied upon by the RTC was not adjusted to reflect these payments. Burns introduced copies of appraisals made for Alpine shortly after the foreclosure sale reflecting higher fair market values than the appraisals on which Alpine had based its bids. Moreover, Alpine's loan records showed the loans as paid off, and no explanation of these entries was offered.

The evidence at trial furnished some reasonable basis for differing conclusions by reasonable minds as to the amounts owing on the notes. *See Kindred v. Con/Chem, Inc.,* 650 S.W.2d 61, 63 (Tex.1983) (setting out test for no evidence/scintilla rule). The jury, as the fact finder, was entitled to resolve these conflicts or inconsistencies in the evidence. We find more than a scintilla of evidence to support the jury's finding of zero owing on the notes, and hold that the trial court erred in entering JNOV. We sustain Burns' first point of error.

In point six, Burns complains of the award to attorney's fees to the RTC. In view of our disposition of point one, we also sustain this point of error. Because the judgment in favor of the RTC was in error, there is no basis for an award of attorney's fees. *LaFreniere v. Fitzgerald,* 669 S.W.2d 117, 119 (Tex.1984) (no entitlement to attorney's fees when judgment reversed).

In Burns' second point of error, he argues that the *D'Oench, Duhme* doctrine does not apply to bar his defenses and counterclaims.[6] Because Burns' defenses and claims are already determined to be barred by the federal holder in due course doctrine, any other grounds for barring his claims are irrelevant to the disposition of this appeal. Thus, we need not determine if *D'Oench* applies. Likewise, we need not address Burns' claims that the JNOV was improperly based on res judicata, collateral estoppel, estoppel, and failure to exhaust administrative remedies, raised in points of error four and five. We

6. The *D'Oench* rule in essence provides that the FDIC and RTC as receivers of failed financial institutions are entitled to rely, to the exclusion of any extraneous matters, on the official bank records that set forth the rights and obligations of the bank and those to whom the bank lends money. *D'Oench, Duhme & Co. v. FDIC,* 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942). These protections generally bar not only defenses, but also affirmative claims for relief typically raised by obligors in collection or deficiency suits. *See Beighley v. FDIC,* 868 F.2d 776, 784 n.

12 (5th Cir.1989) (claims of breach of contract, breach of fiduciary duty, promissory estoppel, and fraud based on oral agreement barred); *but see RTC v. Oaks Apartments Jt. Venture,* 966 F.2d 995, 1000 (5th Cir.1992) (claim or defense not barred if lender fails to satisfy contractually imposed mutual obligations); *Tex. Refrigeration Supply, Inc. v. FDIC,* 953 F.2d 975, 981 (5th Cir.1992) (claims of wrongful acceleration and unreasonable foreclosure sale not barred by *D'Oench* ).

also have no need to address the RTC's cross-point, brought in the event of reversal and rendition of judgment awarding damages to Burns.

In conclusion, because we sustained point of error one, finding that the amounts of the deficiencies were not conclusively established, we must reverse and render judgment that the RTC take nothing on its suits for deficiency judgments, including all attorney's fees. We affirm the trial court's grant of JNOV that Burns' take nothing on his breach of contract claims. In all other respects, the judgments are affirmed.