**S & S DIVERSIFIED SERVICES, L.L.C., Plaintiff,**

v.

**Baldamar ARGUELLO, aka Jose B. Arguello, and David Arguello, Defendants.**

No. 94–CV–1017–B.

United States District Court, D. Wyoming.

Jan. 9, 1995.

Thomas A. Hogan, Casper, Wyoming, for plaintiff.

Stephen R. Winship, Casper, Wyoming, for defendants.

### ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

BRIMMER, District Judge.

The above-entitled matter having come before the Court upon the plaintiff's and the defendant's motions for summary judgment, and the Court, having reviewed the materials on file herein in support of and in opposition to, having heard the oral arguments of the parties, and being fully advised in the premises, FINDS and ORDERS as follows:

#### Background

This is an action brought by the plaintiff to collect on a note endorsed to it by the Federal Deposit Insurance Corporation (the FDIC). Baldamar Arguello (the defendant) owned Arguello Drilling with his brother David Arguello. The brothers formed a corporation on May 20, 1981, but the corporate charter was apparently revoked in 1983 for failure to file an annual report for two consecutive years.

Nonetheless, the business continued and on November 15, 1985, the Arguellos obtained a loan from Stockmens Bank and Trust (hereafter "the bank"), in Gillette, Wyoming. Both brothers signed promissory notes in the amount of $236,223.77 and granted the bank security interests in the company's vehicles and equipment. The note went into default during October 1986, and, with the consent of Baldamar Arguello and David Arguello, the bank seized some of the company's vehicles and equipment. It is undisputed that the bank failed to give the Arguellos

notice of the sale of this collateral in violation of Wyo.Stat. § 34.1–9–504 (1977).[1]

In January 1987, the brothers and the bank executed an "agreement" which lowered the outstanding principal to $230,000 and suspended interest as long as the brothers' annual individual incomes did not rise above $18,000. In May 1987, the bank repossessed another vehicle and further equipment from the brothers and again sold the equipment without giving notice to the brothers. The bank also transferred title on some repossessed vehicles to its name.

In September 1987, the Wyoming State Bank Examiner seized the bank and its assets and appointed the Federal Deposit Insurance Corporation (the FDIC) as receiver. Some time later, on June 5, 1990, the FDIC sold the note to Douglas M. Hess Investments, who returned it to the FDIC, apparently after unsuccessful efforts to collect on it. The FDIC then sold the note to the plaintiff in June 1993.

Plaintiff filed its complaint on February 14, 1994, requesting judgment both on the note and on the guarantee signed by the brothers. In his answer, the defendant admits many of the allegations made by the plaintiff, but asserts a number of affirmative defenses. These affirmative defenses are the subject of the Defendant's Motion for Summary Judgment and will be discussed below.

On July 25, 1994, the Court issued an Order of Dismissal With Prejudice, dismissing Defendant David Arguello, leaving his brother Baldamar Arguello as the sole remaining defendant. Defendant Baldamar Arguello filed his Motion for Summary Judgment on October 24, 1994, making two principal arguments: (1) the plaintiff's claim is barred by the statute of limitations, and (2) the plaintiff's claim is barred by the improper disposition of collateral by the original lending bank.

Also on October 24, 1994, the plaintiff filed its Motion for Summary Judgment. Plaintiff argues that the statute of limitations has not run and that, as an assignee of the FDIC, it

---

1. Although Wyoming adopted a new version of the Uniform Commercial Code in 1991, the prior U.C.C., adopted in 1977, governs the instant transactions since it was the law at the time they occurred.

enjoys a status similar to a holder in due course rendering it immune from such personal defenses. Plaintiff contends that it has established a prima facie case on a negotiable instrument and asks for a judgment on the note.

### *Discussion*

#### Standard of Review

 "By its very terms, [the Rule 56(c)] standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there is no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986) (emphasis in original). An issue of material fact is "genuine" if a "reasonable jury could return a verdict for the nonmoving party." *Id.* at 248, 106 S.Ct. at 2510.

 The trial court decides which facts are material as a matter of law. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.; see also, Moya v. United States,* 35 F.3d 501 (10th Cir.1994). Summary judgment may be entered "against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Moya,* 35 F.3d at 503. The existence of "a scintilla of evidence in support of the plaintiff's position is insufficient to defeat a properly supported motion for summary judgment." *Moya,* 35 F.3d at 503. In considering a party's motion for summary judgment, the court must examine all evidence in the light most favorable to the nonmoving party. *Moya,* 35 F.3d at 502–503.

#### Statute of Limitations:

██ Defendant argues that this case is barred by the six year statute of limitations found at 28 U.S.C. § 2415, which limits contracts claims brought by the United States or one of its agencies to six years. Defendant contends that this general statute applies to claims, such as the instant one, which occurred before the enactment of Financial Institutions Reform, Recovery, and Enforcement Act (hereafter "FIRREA"). The application of FIRREA is dispositive because it provides for a statute of limitation which is the longer of six years or the state statute of limitations. 12 U.S.C. § 1821(d)(14)(A). Although Congress did not give FIRREA a date of effectiveness, it was not enacted until 1989, several years after the transactions in question here. However, this Court and others have held that FIRREA should be applied retroactively. *See, FDIC v. Updike Bro. Inc.,* 814 F.Supp. 1035, 1043 (D.Wyo. 1993) (Johnson, C.J.); *and F.D.I.C. v. New Hampshire Ins. Co.,* 953 F.2d 478, 486 (9th Cir.1991). Therefore, the Court holds that, pursuant to FIRREA, Wyoming's statute of limitations should apply if it is longer than six years.

██ When the note was signed, the applicable statute of limitations was ten years. Wyo.Stat. 1–3–105(a)(i). When Wyoming adopted its latest version of the U.C.C. in 1991, the statute of limitations on negotiable instruments was shortened to six years. Wyo.Stat. 34.1–3–118 (1991). Although the defendant asks this Court to apply the shorter statute of limitations retroactively, Wyoming law clearly prohibits such retroactive application. *National Tailoring v. Scott,* 65 Wyo. 64, 196 P.2d 387 (1948). The Court concludes that Wyoming law provides a ten year statute of limitations which is longer than the six years allowed by FIRREA, and is therefore applicable. 12 U.S.C. § 1821(d)(14)(A).

Defendant also argues that the Court should apply the shorter state statute of limitations because the holder of the note had four months' notice before the shorter notice was enacted. However, in *Meridian Aggregates v. Board of Equalization,* 827 P.2d 375, 378 (Wyo.1992), the Wyoming Supreme Court held that ninety days was not "reasonable time" for the parties to act on a shortened statute of limitations. This Court concludes that the fourth month available to the holder of the note in this case is not sufficient

to distinguish *Meridian Aggregates* and create a "reasonable time" for the plaintiff to act.

Therefore, the Court concludes that the applicable statute of limitations is ten years as prescribed by Wyo.Stat. § 1–3–105(a)(i). Because this action was filed less then ten years after the note went into default, the Court concludes that the plaintiff's claim is not barred by the statute of limitations.

### Violation of U.C.C. Remedies by the Plaintiff's Assignor:

Defendant also argues that the plaintiff's claim is barred because the bank failed to notify them of any sale of collateral and converted some collateral to its own use. In response, the plaintiff draws on the ever-present doctrine of *D'Oench, Duhme and Co. v. FDIC*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942) to strike down such defenses.

It is undisputed that when the note went into default the bank availed itself of possible remedies by seizing some of the collateral belonging to the defendant. Wyo. Stat. § 34–21–962 (1977). However, when creditors avail themselves of such remedies they must comply with the strict rules of the U.C.C. Those rules include notice to the debtor of any sale or disposition. Wyo.Stat. § 34–21–963(c) (1977). It is uncontested by the plaintiff, that its assignor, Stockmens Bank and Trust Company, failed to give the defendant any notice of a subsequent sale.

The Court finds that *Coones v. F.D.I.C.*, 848 P.2d 783, 802 (Wyo.1993) is instructive. In *Coones*, the defendant signed two promissory notes to the same Stockmens Bank and Trust of Gillette, Wyoming. *Id.* at 790. Significantly, it appears that Mr. Coones signed the same form of promissory note signed by the brothers Arguello in the instant case. The two notes signed by Defendant Coones were endorsed to the FDIC after the bank failed. *Id.* After a thorough review of the remedies available to a lender after default, the Wyoming Supreme Court concluded that the FDIC failed to give the maker of the note proper notice about the sale of collateral. *Id.* at 803. As a result, the Wyoming Supreme Court held that the FDIC was

barred from seeking a deficiency judgment against the debtor. *Id.*

Plaintiff argues that the defendant waived all defenses under the terms of the note including those related to notice. However, Wyoming law states that notice rights cannot be waived. *Western Nat'l Bank v. Harrison*, 577 P.2d 635 (Wyo.1978), Wyo. Stat. § 34–9–501(c) (1977). Plaintiff also contends that *Coones* is distinguishable because there the FDIC was the party at fault, not the bank. However, as discussed below, this argument stretches the *D'Oench, Duhme* doctrine beyond its boundaries.

The bank's second failure to comply with the requirements of U.C.C. Article 9 came when it repossessed several vehicles from the defendant and transferred title to its own name. When a creditor takes collateral and transfers title to its own name, even temporarily, the creditor forfeits all right to a deficiency judgment. *Comer v. Green Tree Acceptance, Inc.*, 858 P.2d 560, 563 (Wyo. 1993) and Wyo.Stat. § 34–9–505(b) (1977). Defendant argues that the plaintiff has lost any and all rights to a deficiency judgment because its assignor has failed to comply with the strict provisions of Article 9.

Plaintiff argues that Article 9 of the U.C.C. does not apply to this case because the parties never intended to create a security interest in the collateral. However, the original note describes the terms of the "security agreement" and asserts the lender's rights under the U.C.C. Furthermore, the explicit language found in paragraph six of the later "Agreement" signed by the bank and the defendant states that the collateral surrendered "shall be sold by Stockmens consistent with Article 9 of the Uniform Commercial Code as it exists in the Statutes of the State of Wyoming." The Court holds that the language of the agreements between the parties unambiguously establishes the applicability of Article 9 to this case.

Based on the review of applicable Wyoming state law in *Coones*, this Court concludes that the defendant has a valid defense to the plaintiff's claim.

Nonetheless, the Court must also examine the plaintiff's status as an assignee

of the FDIC to determine if it is immune from the defense asserted by the defendant. Plaintiff strenuously argues that the *D'Oench, Duhme* doctrine entitles it to a holder-in-due course status free from defenses such as failure to notify. To support its position, the plaintiff cites numerous cases that hold that when the FDIC takes assets from a failed bank it is immune from defenses other than those apparent on the face of the documents. *E.g., FSLIC v. Murray*, 853 F.2d 1251 (5th Cir.1988); *FDIC v. McClanahan*, 795 F.2d 512 (5th Cir.1986); *and, Firstsouth, F.A. v. Aqua Construction, Inc.*, 858 F.2d 441 (8th Cir.1988). However, the shield raised by the defendant is of an entirely different type than the secret side agreements that are barred by the *D'Oench, Duhme* doctrine and 12 U.S.C. § 1823(e). The defense raised by the defendant not only involves the loan documents themselves, but also a question about the very existence of a debt to be collected. Under Wyoming law, if the bank violated the Article 9 rights of the debtor, then it had no right to a deficiency judgment to be transferred to the FDIC and assigned to the plaintiff. *Coones, supra.*

A case analogous to the instant one is *FDIC v. Percival*, 752 F.Supp. 313 (D.Neb. 1990), where the FDIC sought a deficiency judgment against a debtor who had defaulted on a promissory note. Prior to assignment to the FDIC, assignor bank and the debtor agreed to the repossession of some of the collateral and the debtor was never given notice of the sale. *Id.* at 316–317. The court in *Percival* concluded that the bank's failure to give notice extinguished any claim for a deficiency judgment and, even armed with the *D'Oench, Duhme* doctrine and 12 U.S.C. § 1823(e), the FDIC could not revive the debt. *Id.* The Court then adopted a magistrate's recommendation that summary judgment be entered for the debtor because there was no debt to be acquired by the FDIC. *Id., see also FDIC v. Nemecek*, 641 F.Supp. 740 (D.Kan.1986) (holding FDIC had no claim where predecessor bank had accepted quit claim deeds to in lieu of foreclosing and seeking deficiency judgment).

Plaintiff's argument does not recognize the limits to the *D'Oench, Duhme* doctrine and 12 U.S.C. § 1823(e). *See, Commerce Fed. Sav. Bank v. FDIC*, 872 F.2d 1240 (6th Cir. 1989) (FDIC is protected only from defenses based on separate or collateral agreements); *FDIC v. McClanahan*, 795 F.2d 512, 515 (5th Cir.1986) (where a note includes bilateral obligations by the parties, a maker may defend himself by contending a bank breached its obligations under the note); *and FDIC v. Merchants Nat'l Bank of Mobile*, 725 F.2d 634, 639 (11th Cir.1984) *cert. denied*, 469 U.S. 829, 105 S.Ct. 114, 83 L.Ed.2d 57 (1984) (12 U.S.C. 1823(e) does not apply when the parties contend that no debt exists because of acts independent of any understanding or side agreement).

■ Whatever advantages *D'Oench, Duhme* and 12 U.S.C. § 1823(e) provide to the FDIC and its assignees, and the advantages are substantial, they cannot resurrect a debt from the dead. *FDIC v. Prann*, 694 F.Supp. 1027, 1037 (D.P.R.1988), *affirmed*, 895 F.2d 824 (1st Cir.1990). The Court also notes that even it the plaintiff did enjoy holder in due course status it would not be sufficient to defeat the defense raised by the defendant. Wyoming Stat. § 34–3–305(a)(ii)(E) (1977) states that a holder in due course takes subject to "[a]ny other discharge of which the holder has notice when he takes the instrument." The documents endorsed to the plaintiff have been previously sold to another party then returned to the FDIC, which alone should be enough to cause the plaintiff to remember *caveat emptor*. However, the plaintiff acquired, along with the note, additional documents detailing the repossession of collateral and suggesting that the note was probably worth its weight in rubles. Despite these obvious warning signs, the plaintiff purchased the note and now seeks to enforce it. Unfortunately, in light of the sloppy actions of the assignor bank, there is no longer a debt for the plaintiff to collect.

The Court notes that the plaintiff cites a case which is on point and contrary to its decision. *See, NCNB Texas Nat'l Bank v. Campise*, 788 S.W.2d 115 (Tex.App.1990). However, in weighing the opinion of the elected Texas Court of Appeals in *Campise* with that of the federal district court in

*Percival,* this Court finds that *Percival* is more in accord with Wyoming law. The Supreme Court of Wyoming has spoken clearly on the issue of debtor's rights and this Court concludes that those rights may take precedent over the FDIC's ability to recover a failed bank's assets. *See, Coones, supra* at 802 ("The policy behind this court's adoption of the absolute bar approach [barring any right to a deficiency judgment for failure to comply with notice provisions] is that it furnishes the most definite deterrent to noncompliance.")

### Conclusion:

Based on the evidence before it, the Court concludes that there are no genuine issues of material fact in question and that summary judgment is appropriate. Based on the Wyoming Supreme Court's policy of protecting the notice rights of debtors, the Court concludes that any rights to a deficiency judgment against the defendant were extinguished by the bank's failure to comply with the notice provisions of the Uniform Commercial Code. Therefore, it is

**ORDERED** that the Plaintiff's Motion for Summary Judgment be, and the same hereby is, **DENIED;** It is further,

**ORDERED,** that the Defendant's Motion for Summary Judgment be, and the same hereby is, **GRANTED;** and the plaintiff's case is hereby **DISMISSED WITH PREJUDICE.**