11th
Court of Appeals

                                                                  Eastland,
Texas

                                                                          Order

 

Gary
Carpenter and Julie Perez

Appellants

Vs.                   No.  11-02-00132-CV B  Appeal from Dallas County

The
Holmes Builders, Inc. 

Appellee

 

The motion for rehearing filed by The Holmes Builders, Inc. and
the motion for judgment nunc pro tunc
filed by Gary Carpenter and Julie Perez are overruled.  Our former opinion and judgment dated
December 18, 2003, are withdrawn, and our opinion and judgment dated February
19, 2004, are substituted therefor.

 

 

W. G. ARNOT, III

CHIEF JUSTICE

 

February
19, 2004

Not
designated for publication.  See
TEX.R.APP.P. 47.2(a).

Panel consists of:  Arnot, C.J., and

Wright, J., and McCall,
J.

 

 








                                                             11th
Court of Appeals

                                                                  Eastland,
Texas

                                                             Memorandum
Opinion

 

Gary Carpenter and Julie Perez

Appellants

Vs.                   No.  11-02-00132-CV B  Appeal from Dallas County

The
Holmes Builders, Inc. 

Appellee

 

This appeal arises from a defective house
foundation claim.  Appellants, Gary
Carpenter and Julie Perez, entered into a written contract in June 1994 with appellee, The Holmes Builders, Inc., to build a home for
them in Farmers Branch, for a total purchase price of $641,000.[1]
Appellants moved into the home in January 1995. 
They filed suit against appellee in May 1999,
alleging that the foundation for their home was inadequately designed and
constructed.  Appellants asserted
numerous theories of liability, including negligence, breach of warranty,
violations of the Texas Deceptive Trade Practices - Consumer Protection Act
(DTPA),[2]
and fraud.  Appellants additionally
pleaded that the applicable limitations periods for their causes of action were
tolled under the discovery rule.  

The jury made liability findings supporting
appellants=
negligence, DTPA, and breach of warranty claims.  The jury also answered a limitations-accrual
question favorably for  appellants with
respect to their DTPA and breach of warranty claims.   The jury awarded appellants damages of
$1,876,600.[3]








Appellee attacked
several of the jury=s
findings in a motion for judgment notwithstanding the verdict.  The motion included a challenge of the jury=s findings regarding the date upon
which appellants= DTPA and
breach of warranty claims accrued.  The
trial court granted the motion solely on the issue of limitations and entered
judgment that appellants take nothing. 
Appellants assert in their first issue that the trial court erred in
disregarding the jury=s
determination that their DTPA claims accrued less than two years prior to  the date they filed suit.  We agree with this contention.  We reverse the trial court=s take-nothing judgment.

                                                               Standard
of Review

  A judgment
notwithstanding the verdict (JNOV) is proper when a directed verdict would have
been proper.  TEX.R.CIV.P. 301; Fort
Bend County Drainage District v. Sbrusch, 818
S.W.2d 392, 394 (Tex.1991).  A plaintiff
is entitled to a directed verdict if he has conclusively proved the elements of
his cause of action, that is, when reasonable minds can draw only one
conclusion from the evidence.  In re
Estate of Crawford, 795 S.W.2d 835, 838 (Tex.App.
‑ Amarillo 1990, no writ)(citing Collora
v. Navarro, 574 S.W.2d 65, 68 (Tex.1978)). A directed verdict for a
defendant is appropriate when the plaintiff fails to present evidence raising a
fact issue essential to the plaintiff=s
right of recovery or when the evidence conclusively establishes a defense to
the plaintiff=s cause
of action.  Prudential Insurance
Company of America v. Financial Review Services, Inc., 29 S.W.3d 74, 77
(Tex.2000).








A trial court may disregard a jury=s findings and grant a motion for
judgment notwithstanding the verdict when there is no evidence upon which the
jury could have made its findings. See Mancorp,
Inc. v. Culpepper, 802 S.W.2d 226, 227 (Tex.1990). ANo
evidence@ exists
and the trial court should render a JNOV, when the record discloses one of the
following:  (1) a complete absence of
evidence of a vital fact; (2) the trial court is barred by rules of law or
evidence from giving weight to the only evidence offered to prove a vital fact;
(3) the evidence offered to prove a vital fact is no more than a scintilla of
evidence; or (4) the evidence establishes conclusively the opposite of a vital
fact.  See Juliette
Fowler Homes, Inc. v. Welch Associates, Inc., 793 S.W.2d 660, 666 n.9 (Tex.1990).
To determine whether there is any evidence, we review the record in the light
most favorable to the verdict, considering only the evidence and inferences
that support the verdict and rejecting the evidence and inferences contrary to
the verdict. Mancorp, Inc. v. Culpepper,
supra at 227. When there is more than a scintilla of competent evidence
to support the jury=s
findings, an appellate court will reverse the JNOV.  See Mancorp,
Inc. v. Culpepper, supra at 228. 
More than a scintilla of evidence exists when the evidence supporting
the finding rises to a level that would enable reasonable minds to differ in
their conclusions.  See National
Convenience Stores, Incorporated v. Matherne, 987
S.W.2d 145, 148 (Tex.App. ‑ Houston [14th
Dist.] 1999, no pet=n)(stating
rule in context of reviewing denial of JNOV).

                                                                 DTPA
Limitations

A claim under the DTPA is subject to the act=s two‑year limitations provision:


All actions brought under this subchapter must be
commenced within two years after the date on which the false, misleading, or
deceptive act or practice occurred or within two years after the consumer
discovered or in the exercise of reasonable diligence should have discovered
the occurrence of the false, misleading, or deceptive act or practice. 

 

Section 17.565.  The DTPA
incorporates the discovery rule.  Burns
v. Thomas, 786 S.W.2d 266, 267 (Tex.1990). 
The discovery rule is an exception to the general rule that a cause of
action accrues when facts come into existence that authorize a claimant to seek
a judicial remedy.  Robinson v. Weaver,
550 S.W.2d 18, 19 (Tex.1977). Under the rule, limitations will not begin to run
until the claimant discovers, or in the exercise of reasonable diligence should
have discovered, the facts establishing a cause of action.  Burns v. Thomas, supra at 267.

As noted previously, appellants filed their
original petition in May 1999.  Since the
original transaction between appellants and appellee
occurred more than two years prior to May 1999, appellants= DTPA claims would be time-barred
unless the commencement of the applicable limitations period was tolled under
the discovery rule.  The jury answered a
limitations-accrual question as follows: 

By what date did [appellants] discover, or in the
exercise of reasonable diligence, should [appellants] have discovered the
conduct, if any, as to which you answered Ayes@ in response to Question Nos. 1, 2, 3
and 4?

 

Answer with Month and Year for
each of the following separately:








Negligence
(Question No. 1)                                                    7-96

Deceptive
Act or Practice (Question No. 2)                              7-98

Unconscionable
course of conduct (Question No. 3)     3-99

Failure
to comply with warranty (Question No. 4)                     2-98

 

A cause of action for negligence is governed by a two‑year
statute of limitations. TEX. CIV. PRAC. & REM. CODE ANN. ' 16.003(a) (Vernon 2002).  The jury=s
determination that appellants knew or should have known of their negligence
claim more than two years prior to the date suit was filed precluded appellants= recovery on a negligence theory.  However, the jury=s
answers of AJuly
1998,@ AMarch 1999,@
and AFebruary
1998@
permitted appellants=
recovery on their DTPA theory of liability. 


      Effect
of Jury=s
Determination of Accrual Date for Appellants=
Negligence Claim

 

Appellee initially
directed its limitations contention at the evidence offered at trial.  Appellee asserted
in the motion for judgment notwithstanding the verdict that the evidence
conclusively established that appellants discovered the existence of their DTPA
causes of action in July 1996.  Appellee=s
argument on appeal includes an additional reason for upholding the judgment
notwithstanding the verdict.   Appellee contends that the jury=s
answer of AJuly 1996@ with respect to the date appellants
knew or should have known of the existence of their negligence claim is another
basis for upholding the judgment notwithstanding the verdict. 








Appellee argues that appellants= negligence and DTPA causes of action
accrued at the same time.  Relying upon
this argument, appellee contends that the jury=s determination of an accrual date of
July 1996 for appellants=
negligence cause of action establishes that appellants did not timely file
their DTPA claim.[4]
Even if appellee=s
assertion that appellants=
negligence and DTPA claims accrued at the same time is correct, appellee has not cited any authority why the jury=s answer for the accrual of the
negligence claim should prevail over the answer for the DTPA claim=s accrual date.  In the absence of such authority, we reject appellee=s
argument that the jury=s
determination of the accrual date of appellants=
negligence cause of action nullifies the jury=s
answer regarding the accrual date of appellants=
DTPA claim.  Instead, we employ the
traditional standard of review for a judgment notwithstanding the verdict by examining
the record to determine if there is any evidence upon which the jury could have
made its determination of the accrual date of appellants=
DTPA claim.  See Mancorp, Inc. v. Culpepper, supra at
227.   

                                          Evidence
Pertaining to the Accrual of Limitations

Appellants undertook efforts to sell their home in
1996.  A potential buyer retained Pete
Hennessey, a structural engineer, to inspect the home.  Hennessey inspected the home on July 12,
1996.  He prepared a report of his
findings on July 18, 1996.  He reported
that the house was constructed with a post-tensioned, concrete slab
foundation.  He stated as follows with
respect to the foundation: ASurvey
readings taken on the foundation slab indicated that there was a 12 [inch] variation in the finished floor
elevation.  This is indicative of some
heave in the foundation.@[5]  He also noted cracks in the mortar, doors in
need of adjustment,  hairline cracks in
walls, and separation of trim.  Hennessey
attributed the movement of the foundation to inadequate drainage around the
home.  He concluded his report by stating
that the house will have Asome
foundation maintenance@
over the future years for which an allowance of $20,000 would be
reasonable.  Hennessey testified at trial
that the foundation movement he observed in July 1996 did not exceed the
applicable building code tolerances for the levelness of a house
foundation.  

Appellants subsequently conferred with Dean Trudel, appellee=s vice president for construction, to
discuss Hennessey=s
report.  Appellant Carpenter testified
that Trudel asserted at the meeting that there were
not any problems with the home. 
Appellant Carpenter further testified that Trudel
advised him that the foundation movement noted by Hennessey was within
acceptable limits and that there was always some settling that occurred with a
new home.  Trudel
testified that he considered the problems identified by Hennessey in 1996 to be
normal.  

At the suggestion of their realtor, appellants
retained Robert W. Jensen, another engineer, to inspect their home in August
1996.  Jensen reported his findings as
follows:








The
foundation of this building is in satisfactory structural condition with no
significant signs of settlement or distress; no remedial action to foundation
is necessary.  Some very minor movement
has apparently occurred along south side of dining room, possibly at SE side of
front entry area, at NW side of den and at SE and NW sides of gameroom, which is not unusual during the initial years in
the life of a structure.  Distress to
masonry veneer and drywall finishes is considered to be cosmetic in nature,
related to soil movements from typical post-construction consolidation and
volumetric soil movements due to seasonal moisture variations.  We consider any foundation deflections to be
within acceptable tolerances.  

 

Jensen described, during his testimony at trial, the condition of
the foundation in August 1996 as being satisfactory.  

Appellants=
efforts to sell the home were unsuccessful.  
In the latter part of 1997, a handyman working at appellants= home advised them of his concern
regarding some cracks that he had observed at the home.  The handyman informed appellants that he
previously worked for a foundation repair company.  He felt that the cracks that he observed
needed to be checked out by an expert. 
Acting upon the advice of their handyman, appellants hired another
engineer to inspect the home in February 1998. 
An elevation survey conducted by Nik Manesh revealed that the home=s
foundation was unlevel by  4.7 inches. 
He concluded that the house had experienced a combination of seasonal
movement and settlement.  Manesh also believed that the concrete foundation of the
home had been poured unlevel.  Manesh proposed the
installation of 12 additional piers to stabilize the house=s foundation.  In May 1998, appellee  retained a foundation repair company to
perform the work recommended by Manesh.  

Jensen performed another inspection of the home in
October 1998 after the completion of the repairs suggested by Manesh.  Jensen
concluded that some movement of the foundation had occurred since his first
inspection in August 1996.  He noted that
the foundation had as much as five inches of elevation differential.  He attributed the movement to expansion of
the soil supporting the foundation.   

                                                            Analysis








The accrual of a DTPA action occurs when the
plaintiff knew or should have known of the wrongfully caused injury.  KPMG Peat Marwick v. Harrison County
Housing Finance Corp., 988 S.W.2d 746, 749 (Tex.1999); J.M. Krupar Construction Co., Inc. v. Rosenberg, 95  S.W.3d 322 (Tex.App.
- Houston [1st Dist.] 2002, no pet=n).  Appellee contends
that the initial findings made by Hennessey in July 1996 conclusively
established that appellants knew or should have known of their injury in July
1996.   Under appellee=s analysis, appellants knew or should
have known of their injury when they became aware of any property damage with
the home.   

The primary injury for which appellants seek a
recovery is a defectively designed and constructed house foundation. While
there is no dispute that Hennessey noted some foundation movement and
cosmetic deficiencies with the home in July 1996, he described the
movement to be within the applicable building code tolerances for the levelness
of a house foundation.  Appellee=s
representative characterized the matters noted by Hennessey as normal
changes.   Jensen determined that the
house=s
foundation was in satisfactory structural condition soon after Hennessey=s inspection.  These matters constitute evidence that
appellants were not aware that the home=s
foundation was defective in July 1996. 
The findings made by Manesh in February 1998
support the jury=s
determination that appellants=
DTPA claim did not accrue until that date.  
Appellants= first
issue is sustained.  

                                                 Appellants= Remaining Appellate Issues

Appellants have briefed three additional issues on
appeal.  Appellants= second, third, and fourth issues are
in the nature of responses to cross-points which appellants anticipated being
raised by appellee in support of the judgment
notwithstanding the verdict.  The second
issue addresses appellants=
contention that appellee waived complaints regarding
the jury charge.  We do not address the
second issue because its determination is not relevant to a resolution of the
parties= contentions
on appeal.   Appellants= third issue is an anticipatory
response to a challenge of the evidence supporting the jury=s award of mental anguish damages to
appellants.  With respect to their fourth
issue, appellants contend that the evidence was sufficient to support the jury=s determination of liability as to
causation.  Appellants= third and fourth issues are addressed
below in our discussion of appellee=s cross-points.

                                                                    Cross-Points        








When an appellate court determines that the trial
court erroneously rendered a judgment notwithstanding the verdict, the
appellate court must reverse the judgment of the trial court and enter judgment
in harmony with the verdict unless the appellee
presents a cross‑point sufficient to vitiate the jury=s verdict.  See TEX.R.CIV.P. 324(c); TEX.R.APP.P.
38.2(b); Burns v. Resolution Trust Corporation, 880 S.W.2d 149, 151 (Tex.App. ‑ Houston [14th Dist.] 1994, no writ).  Appellee has
responded to appellants=
third and fourth issues by asserting that the evidence was legally and
factually insufficient to support the jury=s
award of mental anguish damages and the jury=s
determination that appellee=s
conduct constituted a producing cause of damages to appellants.  We address appellee=s responses to appellants= Aanticipatory@ appellate issues as cross-points.  See TEX.R.APP.P. 38.9.  

                                                           Mental
Anguish Damages

The jury awarded each appellant mental anguish
damages in the amount of $150,000.[6]  Appellee challenges
the legal and factual sufficiency of the evidence supporting this award.  To review the legal sufficiency of the
evidence, the appellate court must consider all the evidence in the light most
favorable to the prevailing party and must indulge every reasonable inference
in favor of the prevailing party.  Associated
Indemnity Corporation v. CAT Contracting, Inc., 964 S.W.2d 276, 285-86
(Tex.1998); Merrell Dow Pharmaceuticals, Inc. v. Havner,  953 S.W.2d 706, 711 (Tex.1997), cert. den=d, 523 U.S. 1119 (1998); Harbin
v. Seale, 461 S.W.2d 591, 592 (Tex.1970).  
Any evidence supporting the finding that is of probative value and that
is more than a scintilla is legally sufficient to uphold the finding.  Leitch v.
Hornsby, 935 S.W.2d 114, 118 (Tex.1996); see Merrell Dow
Pharmaceuticals, Inc. v. Havner, supra. In order
to determine if the evidence is factually sufficient, we must review all of the
evidence and determine whether the challenged finding is so against the great
weight and preponderance of the evidence as to be manifestly unjust. Pool v.
Ford Motor Company, 715 S.W.2d 629 (Tex.1986);In re King=s Estate, 244 S.W.2d 660
(Tex.1951).








To support an award of mental anguish damages, a
plaintiff must either present Adirect
evidence of the nature, duration, and severity of [his] mental anguish, thus
establishing a substantial disruption in the plaintiffs=
daily routine,@ or Aevidence of >a
high degree of mental pain and distress=
that is >more
than mere worry, anxiety, vexation, embarrassment, or anger.=@  Latham v. Castillo, 972 S.W.2d 66,
69-70 (Tex.1998)(citing Parkway Company v. Woodruff, 901 S.W.2d 434, 444
(Tex.1995)).  The evidence must also
justify the amount awarded.  Saenz v.
Fidelity & Guaranty  Insurance
Underwriters, 925 S.W.2d 607, 614 (Tex.1996).  Although the impossibility of any exact
valuation requires that juries be given a measure of discretion in finding
damages, that discretion is limited.  Saenz
v. Fidelity & Guaranty Insurance Underwriters, supra.  A jury must find an amount that Awould fairly and reasonably compensate@ for the loss; however, A[j]uries
cannot simply pick a number and put it in the blank.@  Saenz v. Fidelity & Guaranty Insurance
Underwriters, supra at 614.  

Appellant Carpenter testified that the problems
with his Adream
home@ had
weighed heavily on his mind.  He
testified that it was very painful for him to see the problems with the home on
a daily basis.  He stated that he
suffered a great deal of anxiety, embarrassment, and feelings of helplessness
living in a home that could not be sold and that continued to get worse.  He also attributed a recurring eye infection
to the stress caused by the problems with the home.  Appellant Carpenter testified that he had
endured many sleepless nights in the 32
years preceding the trial.  Appellant
Perez testified that she had cried every day 
since receiving Manesh=s
report in 1998.  She stated that the
ordeal had put appellants=
lives Aon hold@ for 32
years. She additionally testified that the matter caused a great deal of stress
on a daily basis.  Appellant Perez testified
that she had also lost sleep and experienced severe worry and anxiety.  








Appellants=
testimony constitutes evidence that the ordeal concerning their home caused a
substantial disruption of their daily routines over an extended period of
time.  As such, the jury=s award of mental anguish damages was
supported by legally sufficient evidence. 
Furthermore, the award of mental anguish damages is not against the
great weight and preponderance of the evidence. 
The evidence is also both legally and factually sufficient to support
the amounts of mental anguish damages awarded by the jury.  Appellants testified that they suffered
mental anguish on a daily basis over an extended period of time.  The amounts awarded are reasonable in light
of the frequency and duration of appellants=
mental suffering.  Furthermore, the
mental anguish damages are not unreasonable when compared to the other damages
awarded by the jury.  Appellee=s cross-point attacking the jury=s award of mental anguish damages is
overruled.

                                                             Evidence
of Causation

Appellee additionally
challenges the legal and factual sufficiency of the evidence supporting the
jury=s
determination that its alleged DTPA violations caused damage to appellants.
Appellants premised their DTPA claims on the representations that appellee allegedly made concerning the quality of its
construction and the suitability of a slab-on-grade foundation for appellants= home. 
Appellants focused their complaints on appellee=s selection of the type of foundation
to be used in the construction of the home. 
Appellants asserted that the home should have been constructed with a
pier-and-beam foundation.  They testified
that they brought up the matter of a pier-and-beam foundation during the
planning stages of the home=s
construction.  Appellants testified that appellee=s
representatives advised them that a slab-on-grade foundation would be superior
to a pier-and-beam foundation.  

Appellee built the
foundation for the house without obtaining a site-specific inspection of the
soil which would underlie the home.  The
evidence reflects that appellee had previously
constructed another home in the same neighborhood for which a soil inspection
had been performed.  This soil report
stated as follows:  

A slab-on-grade floor system should not be used at
this site due to the excessive shrink/swell movement potential of the very high
plasticity clays found at the site.  A
raised floor system with a minimum void space of eighteen inches should be used
to isolate the structure from the effect of these soil movements.

 

This evidence reflects deficiencies in appellee=s selection of a slab-on-grade
foundation for appellants=
home.  Accordingly, there is both legally
and factually sufficient evidence supporting the jury=s
determination that appellee=s
alleged DTPA violations were a producing cause of appellants= damages.  Appellee=s cross-point attacking the jury=s determination of causation is
overruled.

                                                       Appellee=s
Listed Cross-Points

Appellee=s
brief contains a section entitled ACross-Points@ which states in its entirety as
follows:








Issues which would otherwise be raised by cross-point pursuant to
[TEX. R. CIV. P. 38.2(b)] were anticipated by Appellants in Issues [3] and [4],
to which response is made above. 
However, pursuant to said rule, Appellants reiterate by cross-point the
issues raised in its motion for new trial which were not reached by the trial
court and which were not otherwise anticipated by Appellants in their opening
brief.

Cross-Point No. 1:       There is factually insufficient evidence
to support the jury=s answer
to Question No. 2 (false, misleading or deceptive act or practice).

 

Cross-Point No. 2:       There is factually insufficient evidence
to support the jury=s answer
to Question No. 3 (unconscionable action or course of action).

 

Cross-Point No. 3        There is factually insufficient evidence
to support the jury=s answer
to Question No. 9 (knowing conduct).

 

Cross-Point No. 4        There is factually insufficient evidence
to support the jury=s answer
to Question No. 11 (additional damages under the DTPA).  

 

Appellee does not present any argument
in support of the four cross-points listed in its brief.  See TEX.R.APP.P. 38.2(a)(1) &
38.1(h).  Irrespective of this deficiency,
we will address, in the interest of justice, the contentions which appellee has listed as cross-points. 

                                                    Cross-Point
No. 1

The merits of Cross-Point No. 1 (factually
insufficient evidence of a false, misleading, or deceptive act or practice)
have previously been addressed in our discussion of the evidence supporting the
jury=s
determination of causation.  Appellants
testified that appellee represented to them that its
construction of the home would be of high quality.   There is also evidence of appellee making representations about the suitability of a
slab-on-grade foundation for appellants=
home.  In light of the evidence
pertaining to deficiencies with the home=s
construction, there is factually sufficient evidence to support the jury=s determination that appellee engaged in false, misleading, or deceptive acts or
practices that were a producing cause of damages to appellants.  Cross-Point No. 1 is overruled.

                                                    Cross-Point
No. 2

Cross-Point No. 2 addresses the jury=s determination that appellee engaged in an unconscionable course of
action.  Appellants alleged unconscionability as an alternative theory of recovery
under the DTPA.   Our review of the jury=s determination of unconscionability
is not necessary in light of the jury=s
determination that appellee engaged in false,
misleading, or deceptive acts or practices that were a producing cause of
damages to appellants.  








                                                                Cross-Point
No. 3

The merits of Cross-Point No. 3 (factually
insufficient evidence of knowing conduct) were also addressed in our discussion
of the evidence supporting the jury=s
determination of causation.  A finding
that a DTPA defendant=s
conduct was committed knowingly permits a claimant to recover damages for
mental anguish and additional damages of not more than three times the amount
of economic damages.  Section
17.50(b)(1).  The supreme court has held
that a knowing violation occurs when the offending party has Aactual awareness@of
the deception:

AActual awareness@
does not mean merely that a person knows what he is doing; rather, it means
that a person knows that what he is doing is false, deceptive, or unfair.  In other words, a person must think to
himself at some point, AYes,
I know this is false, deceptive, or unfair to him, but I=m
going to do it anyway.@

 

St. Paul Surplus Lines Insurance Company, Inc. v. Dal‑Worth Tank Company, Inc., 974 S.W.2d 51, 53‑54
(Tex.1998).   The fact that appellee
possessed a soil report from a lot in the same neighborhood which recommended
that a slab-on-grade foundation not be used constitutes factually sufficient
evidence to support the jury=s
finding of knowing conduct.  Cross-Point
No. 3 is overruled.

                                                                Cross-Point
No. 4

Appellee challenges the
factual sufficiency of the evidence supporting the jury=s
award of $1,000,000 in additional damages under the DTPA.   Based upon the jury=s
finding of knowing conduct and its award of economic damages to appellants in
the amount of $657,000, the jury could have awarded additional damages of up to
$1,971,000.  See Section
17.50(b)(1).  Since the jury=s award of additional damages was less
than three times the amount of economic damages, the jury acted with discretion
in making this award.  Cross-Point No. 4
is overruled.

                                                                      Conclusion

The trial court=s
judgment notwithstanding the verdict is reversed and rendered in favor of Gary
Carpenter and Julie Perez.  This case is
remanded to the trial court for the entry of a final judgment awarding Gary
Carpenter and Julie Perez damages in accordance with the jury=s verdict.

 

W. G. ARNOT, III

CHIEF JUSTICE

February 19, 2004

Not designated for publication. 
See TEX.R.APP.P. 47.2(a).

Panel
consists of: Arnot, C.J., and

Wright,
J., and McCall, J.         











     [1]The
purchase price included the price of the lot upon which the house was located.





     [2]TEX.
BUS. & COM. CODE ANN. '' 17.41 - 17.63 (Vernon 2002).





     [3]The
amount of $1,876,600 does not include prejudgment interest, post-judgment
interest, or recoverable court costs.





     [4]Appellee is essentially contending that the jury should
have determined the same accrual date for appellants= negligence and DTPA claims.  Appellee did not
raise the issue of conflicting jury answers prior to the jury=s discharge.   A
claim of irreconcilable jury findings is waived if not raised prior to the jury=s discharge.  Roling v. Alamo Group (USA), Inc., 840 S.W.2d
107, 109 (Tex.App. B  Eastland 1992, writ den=d).





     [5]Hennessey
and the other testifying experts used the word Aheave@ to describe the upward movement of a structure=s foundation. 





     [6]The
jury awarded damages to appellants as follows: (a) mental anguish damages to
Appellant Carpenter - $150,000; (b) mental anguish damages to Appellant Perez -
$150,000; (c) reasonable and necessary costs of repairing appellants= home - $550,000; (d) loss of market value of home
after repairs are completed - $107,000; (e) appellants= attorney=s fees -
$111,000; and (f) additional damages under the DTPA - $1,000,000.